Affirmed and Memorandum Opinion filed May 8, 2003









Affirmed and Memorandum Opinion filed May 8, 2003.

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00285-CV

____________

 

JAYNE KNOPP, Appellant

 

V.

 

VICTOR CHARLES KNOPP, Appellee

 



 

On Appeal from the 246th District Court

Harris County, Texas

Trial Court Cause No. 94-03391

 



 

M E M O R A N D U M   O
P I N I O N

Jayne Knopp appeals the appointment of Victor Charles Knopp (“Chuck”)
as sole managing conservator of their two children, Stephanie and Eric
Knopp.  We affirm. 

                                                             I. 
Background








Jayne and Chuck Knopp were divorced on May 25, 1995.  Under the May 25, 1995 final divorce decree,
Jayne was appointed sole managing conservator, with the exclusive right to
establish the primary residence of the children, while Chuck was appointed
possessory conservator.  On November 29,
2000, Jayne and the children moved from Katy, Texas to Santa Barbara,
California.  On December 22, 2000, Jayne
filed a petition to modify the parent-child relationship, seeking (1) an
increase in child support, (2) modification in the terms regarding Chuck=s access to or possession of the
children in that he be required not to leave the children unattended or without
proper supervision during periods of possession, and (3) a temporary
restraining order and injunction enjoining Chuck from removing the children
from California and bringing them back to Texas.  

On January 5, 2001, Chuck filed an original answer and
counter-petition, seeking appointment as joint managing conservator and primary
caretaker of the children, a decrease in the amount of child support due to
costs of travel during pendency of the case, and temporary orders appointing
Jayne and him temporary joint managing conservators with Chuck as primary
caretaker of the children pending the outcome of his petition to modify the
conservatorship.  

On January 9, 2001, the trial court extended a temporary
restraining order that restrained both Jayne and Chuck from (1) molesting or
disturbing the peace of the children, (2) disrupting or withdrawing the
children from the school in Santa Barbara in which they were currently
enrolled, and (3) hiding or secreting the children from the other parent.  After a hearing on the temporary orders, the
trial court denied Chuck’s request for temporary relief on January 10, 2001.  Jayne and the children were allowed to stay in
California. 

On February 28, 2001, Chuck filed an amended counter-petition
to modify seeking appointment as sole managing conservator and primary
caretaker of the children and Jayne appointed possessory conservator.  On December 7, 2001, after a bench trial, the
trial court signed the final order, appointing Chuck sole managing conservator
with the exclusive right to establish the primary residence of the children,
appointing Jayne possessory conservator, removing Chuck’s obligation to pay
child support, and awarding Chuck $150 in monthly child support. 








On appeal, Jayne challenges the December 7, 2001 order
appointing Chuck sole managing conservator. 
Specifically, Jayne contends there was no evidence or factually
insufficient to support either an implied finding of a material and substantial
change of circumstances, or an implied finding that appointing Chuck sole
managing conservator is in the best interest of the children.  

                                                                              




II.  Standard of Review

A trial court=s order modifying conservatorship will not be disturbed on
appeal unless the complaining party establishes a clear abuse of
discretion.  Gillespie v. Gillespie,
644 S.W.2d 449, 451 (Tex. 1982); In re P.M.B., 2 S.W.3d 618, 621 (Tex.
App.CHouston [14th Dist.] 1999, no pet.).  A trial court abuses its discretion when its
ruling is arbitrary, unreasonable, or without reference to any guiding rules or
legal principles.  K-Mart Corp. v.
Honeycutt, 24 S.W.3d 357, 360 (Tex. 2000). 
The fact that a trial judge may decide a matter within its discretionary
authority differently than the reviewing court in similar circumstances does
not establish an abuse of discretion.  Downer
v. Aquamarine Operators, Inc., 701 S.W.2d 238, 242 (Tex. 1985).  The trial court does not abuse its discretion
as long as some evidence of a substantive and probative nature exists to
support the trial court=s decision.  In re
C.R.O., 96 S.W.3d 442, 447 (Tex. App.CAmarillo 2002, pet. filed); Jenkins
v. Jenkins, 16 S.W.3d 473, 477 (Tex. App.CEl Paso 2000, no pet.).  








Under the abuse of discretion standard, the legal and factual
sufficiency of the evidence are not independent grounds of error, but are
merely factors in assessing whether the trial court abused its discretion.  Beaumont Bank, N.A. v. Buller, 806
S.W.2d 223, 226 (Tex. 1991); Zieba v. Martin, 928 S.W.2d 782, 786 (Tex.
App.CHouston [14th Dist.] 1996, no
writ).  We review the trial court’s
findings of fact for legal and factual sufficiency of the evidence by the same
standards applied in reviewing the evidence supporting a jury’s finding.  Catalina v. Blasdel, 881 S.W.2d 295,
297 (Tex. 1994).  When reviewing the
legal sufficiency of the evidence, we consider only the evidence and inferences
tending to support the trial court=s finding, disregarding all contrary
evidence and inferences.  Bradford v.
Vento, 48 S.W.3d 749, 754 (Tex. 2001). 
A “no evidence” point will be sustained if there is no more than a
scintilla of evidence to support the finding. 
Minyard Food Stores, Inc. v. Goodman, 80 S.W.3d 573, 577 (Tex.
2002).  In conducting a factual
sufficiency review, we must examine the entire record, considering both the
evidence in favor of, and contrary to, the challenged finding, and set aside
the finding only if it is so contrary to the overwhelming weight of the
evidence as to be clearly wrong and unjust. 
Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406B07 (Tex. 1998).  

Jayne admits that she failed to request findings of fact and
conclusions of law by failing to timely file a notice of past due
findings.  Tex. R. Civ. P.
297.  When the trial court does not issue
findings of fact and conclusions of law, all facts necessary to support the
judgment, and supported by the evidence, are implied.  D.H. Blair Inv. Banking Corp. v. Reardon,
97 S.W.3d 269, 273 (Tex. App.CHouston [14th Dist.] 2002, pet. filed); Nguyen v.
Intertex, Inc., 93 S.W.3d 288, 293B94 (Tex. App.CHouston [14th Dist.] 2002, no
pet.).  When the appellate record
includes both the reporter=s record and the clerk’s record, the implied findings are not
conclusive and may be challenged for legal and factual sufficiency.  D.H. Blair Inv. Banking Corp., 97
S.W.3d at 273; Curtis v. Commissioner for Lawyer Discipline, 20 S.W.3d
227, 232 (Tex. App.CHouston [14th Dist.] 2000, no pet.).  

            III. 
Material and Substantial Change of Circumstances

Jayne
asserts her relocation to Santa Barbara does not constitute a material and substantial
change to support the trial court=s order modifying the
conservatorship.  Section 156.101 of the
Texas Family Code sets forth the grounds for modifying the order establishing
the conservatorship:

The court may modify an order or portion of a decree
that provides for the appointment of a conservator of a child, that provides
the terms and conditions of conservatorship, or that provides for the
possession of or access to a child if modification would be in the best
interest of the child and:

(1) the circumstances of the child, a conservator, or
other party affected by the order have materially and substantially changed
since the date of the rendition of the order;

(2) the child is at least 12 years of age and has filed
with the court, in writing, the name of the conservator who is the child=s preference to have the exclusive right to determine
the primary residence of the child; or 








(3) the conservator who has the exclusive right to
establish the primary residence of the child has voluntarily relinquished the
primary care and possession of the child to another person for at least six
months.  

 

Tex. Fam. Code Ann. ' 156.101 (Vernon 2002).[1]  

The El Paso Court of Appeals recently addressed whether
relocation constitutes a material and substantial change.  See Bates v. Tesar, 81 S.W.3d 411, 430
(Tex. App.CEl Paso 2002, no pet.).  The Bates court held that while
relocation, regardless of distance, is not sufficient to establish a material
and substantial change in circumstances, it further observed that “if the
custodial parent moves a significant distance, a finding of changed
circumstances may be appropriate.”  Id.;
see also Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299, 309 n.9
(1991) (“We do not hold that a proposed relocation constitutes a substantial
and material change in circumstances as a matter of law, but it is difficult to
imagine an instance in which a proposed relocation will not render an existing
parenting plan or custody-and-visitation arrangement unworkable.”).  








With regard to this fact-intensive inquiry, Bates
listed the following factors to consider in determining whether relocation is a
material and substantial change in circumstances: (1) the distance involved;
(2) the quality of the relationship between the noncustodial parent and the
child; (3) the nature and quantity of the child=s contacts with the noncustodial
parent, both de jure and de facto; (4) whether the relocation would deprive the
noncustodial parent of regular and meaningful access to the child; (5) the
impact of the move on the quantity and quality of the child’s future contact
with the noncustodial parent; (6) the motive for the move; (7) the motive for
opposing the move; (8) the feasibility of preserving the relationship between
the noncustodial parent and the child through suitable visitation arrangements;
and (9) the proximity, availability, and safety of travel arrangements.  81 S.W.3d at 430.  

Jayne contends the factors set forth in Bates, as
applied to the evidence here, do not support a finding of a material and
substantial change in circumstances. 
Stephanie and Eric were doing well in school and involved in
extracurricular activities in Santa Barbara. 
Jayne testified that she was more involved in the children=s lives because her health had
improved since moving to Santa Barbara. 
Jayne maintains there was no showing that as a result of the move, the
children were denied the substantial involvement of their father because Chuck
either missed or was late for visitation on numerous occasions and was not
substantially involved in the children=s extracurricular activities.  Moreover, Jayne points out that after her
house burned down on October 6, 2000, while she and the children first stayed
in a motel and then with a friend for five weeks, Chuck only called the
children on a couple of occasions and did not offer them any assistance.  Jayne further complains that although Chuck
had plans to hire a nanny and cut back his office hours if appointed sole
managing conservator, he had not done so by the time of trial.  

Contrary to Jayne=s assertion, applying the factors
found in Bates to this case establishes that the evidence is both
legally and factually sufficient to support an implied finding that the
relocation to Santa Barbara was a material and substantial change.  Jayne and the children moved a significance
distance from Katy, Texas to Santa Barbara, California.  Although there is evidence that Chuck missed
or was late for some visitations, there was also evidence showing that Chuck
was involved in the children’s lives. 
Chuck testified that he attended most of their soccer games and some of
their practices, and he helped the children with their homework on evenings
when he did not have visitation.  








There is evidence to show the children=s relocation deprived Chuck of
regular and meaningful access to the children. 
When Chuck visited the children in Santa Barbara on weekends, he had a 32 hour flight to Los Angeles and a two
hour drive to Santa Barbara, arriving in time to pick up the children from
school.  When returning to Katy the
following Sunday, he dropped the children off with Jayne at 9:30 a.m. to catch
his 1:30 p.m. flight out of Los Angeles. 
Chuck testified this shortened his weekend visits with the
children.  Chuck further testified he
could not be as involved in the children=s lives as he was when they were in
Katy.  When the children lived in Katy,
he paid for their extracurricular activities because he could be involved with
the children in those activities; however, he did not pay for those activities
while the children lived in Santa Barbara because he could no longer be
involved in their activities.  Moreover,
when the children lived in Katy, Chuck was always nearby.

Jayne testified that she moved for health reasons.  Jayne testified that since she has lived in
Santa Barbara she no longer suffers from the same allergies and pollution she
had in Katy.  She also has not been
hospitalized since leaving Katy.  Because
her health had improved, Jayne claims she was able to be more involved in the
children=s activities.  Jayne also testified she moved because she
had a job opportunity in Santa Barbara. 
There is no evidence that Jayne has had any regular employment since the
divorce.  Jayne had arranged for a job
with Integrated Capital Services in Santa Barbara before moving there.  When her employer relocated to Beverly Hills,
Jayne decided to pursue a career in real estate.  Jayne further testified she moved because of
the stress of her strained relationship with Chuck, who was often verbally
abusive with her.  

Chuck testified he is opposed to the move because of the
negative impact on his relationship with the children.  Chuck is also opposed to the move to Santa
Barbara because there is no network of friends and family in Santa
Barbara.  We find the evidence is both
legally and factually sufficient to support an implied finding that the
relocation to Santa Barbara constitutes a material and substantial change in
circumstances.  

                                       IV. 
Best Interest of the Children








The
other requirement Chuck had to establish under section 156.101 was that his
appointment as sole managing conservator is in the best interest of the
children.  Jayne challenges the legal and
factual sufficiency of the evidence supporting an implied finding that the
appointment of Chuck as the sole managing conservator is in the best interest
of the children.  In determining
conservatorship and possession issues, the best interest of the child is always
the primary consideration.  Tex. Fam. Code Ann. ' 153.002 (Vernon 2002); Lenz v.
Lenz, 79 S.W.3d 10, 14 (Tex. 2002). 
Furthermore, public policy of this State is to:

(1) assure that children will have frequent and
continuing contact with parents who have shown the ability to act in the best
interest of the child; 

(2) provide a safe, stable, and nonviolent environment
for the child; and 

(3) encourage parents to share in the rights and
duties of raising their child after the parents have separated or dissolved
their marriage. 

 

Tex. Fam. Code Ann. ' 153.001(a) (Vernon 2002).  

In addressing the best interest of the child standard in the
context of a relocation case, the Texas Supreme Court in Lenz considered
the following factors:  (1) the
relationship with and presence of extended family; (2) the presence of friends;
(3) the presence of a stable and supportive environment; (4) the custodial
parent=s improved financial situation and
ability to provide a better standard of living for the children; (5) positive
impact on the custodial parent’s emotional and mental state, with beneficial
results to the children; (6) the non-custodial parent=s right to have regular and
meaningful contact; (7) the ability of the non-custodial parent to relocate;
(8) the ability of the non-custodial parent to adapt his work schedule to be
with the children.  79 S.W.3d at 15B19. 


The court in Bates similarly considered the following
factors: (1) the degree to which the custodial parent’s and the child=s life may be enhanced economically,
emotionally, and educationally by the move; (2) a comparison of the quality of
lifestyle; (3) the negative impact of any continued hostility between the
parents; (4) the effect on the move on extended family relationships; and (5)
the child’s age, community ties, health and educational needs, and
preferences.  81 S.W.3d at 434 (citing Tropea
v. Tropea, 87 N.Y.2d 727, 642 N.Y.S.2d 575, 665 N.E.2d 145, 151 (1996); In
re Marriage of Smith, 172 Ill.2d 312, 216 Ill. Dec. 652, 665 N.E.2d 1209,
1213 (1996)).  








Jayne argues that when the best interest factors related to
relocation are applied to the facts of this case, the evidence establishes that
a change in the sole managing conservatorship is not warranted.  Jayne maintains the move enhanced her and the
children’s economic, emotional, and educational situation, and improved their
overall quality of life.  Jayne asserts
her health has greatly improved since moving to Santa Barbara and, therefore,
she was able to be more involved with the children’s activities.  Moreover, the children liked living in Santa
Barbara and were doing well in school.  Jayne further contends that she lived in an
atmosphere of fear and hostility in KatyCa situation that had improved since
the relocation to Santa Barbara.  

Jayne argues the move did not affect the children’s
relationship with extended family.  She
explains the move did not eliminate visits with extended family in light of
summer visitation.  With respect to the
children=s age, community ties, health and
educational needs, and preferences, Jayne points out that the children stated
they preferred to remain with her in Santa Barbara.  Jayne also asserts the children=s educational needs were being met in
Santa Barbara as they were in Katy.  The
children were honor students in Katy and continued to be honor students in
Santa Barbara.  Concerning the children=s health needs, Jayne argues the fact
that the children=s father is a physician is not sufficient to support an
appointment of sole managing conservator. 


Although the Supreme Court in Lenz did not address the
Holley[2]
best interest factors, other courts of appeals have addressed those
factors.  See In re C.R.O., 96
S.W.3d at 451; Bates, 81 S.W.3d at 433B34. 
The Holley factors include:  (1) the desires of the child; (2) the
emotional and physical needs of the child now and in the future; (3) the
emotional and physical danger to the child now and in the future; (4) the
parental abilities of the individuals seeking custody; (5) the programs
available to assist these individuals to promote the best interest of the
child; (6) the plans for the child by these individuals or by the agency
seeking custody; (7) the stability of the home or proposed placement; (8) the
acts or omissions of the parent which may indicate that the existing
parent-child relationship is not a proper one; and (9) any excuse for the acts
or omissions by one parent.  Holley,
544 S.W.2d at 371B72.  








Jayne states the children want to live with her, she has
always cared for them, and they have always looked to her for emotional
support. Chuck often missed or was late for visitation and missed the children’s
events such as birthday parties.  Chuck
did not offer any support or assistance after Jayne’s house burned even though
she and the children lived in a motel and then with friends.  Jayne concedes that although she made some poor
decisions with regard to finances, she asserts that she has provided the
children with a home, food, and clothes. 
Finally, Jayne maintains that Chuck has not been able to point to any
action on her part that has affected the welfare of the children.

Applying the best interest factors found in Holley, Lenz,
and Bates, we conclude the evidence is legally and factually sufficient
to support an implied finding that the appointment of Chuck as sole managing
conservator is in the best interest of the children.  Jayne did not tell Chuck that she and the
children were moving to Santa Barbara until after they had arrived in
California.  At that time, Jayne would
not give him an address or home phone number. 
Chuck first heard of the move after Jayne and the children had left Katy
when the mother of one of Stephanie’s classmates told him that Stephanie had
informed her friends at school she was moving to California.  Jayne asserts she did not inform Chuck prior
to the move as required under the divorce decree because Chuck was verbally
abusive.  To make the move, Jayne took
the children out of school at the end of November 2000, prior to the end of the
semester.  The children did not take
their final exams, and Eric was not able to participate in a spelling bee in
which he was a finalist.  








Chuck testified he could not be a part of the children=s lives while they were living in
Santa Barbara.  Although Chuck has missed
and been late for some visitations, he helped the children with their homework
on evenings when he did not have visitation. 
Chuck testified that he was able to attend most of the children=s soccer games and some practices in
Katy.  Chuck testified that when the
children lived in Katy, he paid for their extracurricular activities because he
was involved in those activities; however, when the children lived in Santa
Barbara, he was no longer involved in their activities and, therefore, stopped
paying for their extracurricular activities. 
Chuck further testified that the length of his weekend visitations with
the children was shortened because of the travel time between Katy and Santa
Barbara.  Finally, Chuck testified, and
Jayne admitted, that she monitored his telephone conversations with the
children.  

Chuck complains there is no network of family and friends for
the children in Santa Barbara.  For
example, when Jayne was in Texas for her deposition, her boyfriend, whom she
had only known for two months, stayed with the children because Jayne’s
21-year-old daughter from a previous marriage, Misty Whitely, who was supposed
to stay with the children, was not able to get back to Santa Barbara in time
after returning from an out-of-town trip. 
The evidence showed the children have extended family in Texas.  Chuck=s father lives in Port Lavaca; his
brother and sisters, along with their children, also live in Texas.  Chuck testified that the children’s close
relationship with his family was affected by the move to Santa Barbara.  

Jayne=s sister, who lives in Forth Worth, testified she saw the
children five or six times a year prior to the move.  Another sister, Connie Klostermann, who lives
in Bellville, testified that she was concerned that if something happened to
Jayne in Santa Barbara, no one would be able to get out there fast enough to
take care of the children.  Connie
acknowledged that Misty, Jayne’s daughter, is good with the children, but
pointed out that Misty was only 21 years old. 


Chuck testified that he worked 12 to 14 hours a day, but that
he would cut back his hours so that he could leave his office by 5:00 every
afternoon.  He planned to get a nanny to
watch the children when he could not be at home with them.  Although he had not hired a nanny at the time
of trial, he had made arrangements for his former office manager, of whom the
children were very fond, to watch the children until he hired a nanny.  In Santa Barbara, the children attended YMCA
daycare after school on occasion.  








Chuck testified that he teaches the children fiscal
responsibility.  He gives them a weekly
allowance, but makes them save half of it and has opened savings accounts for
them.  Jayne testified that after the
divorce, she lent someone $50,000, none of which was paid back.  She stated that any emergency funds have been
depleted.  Finally, Jayne admitted that
she had smoked marijuana with Misty, who was an adult at the time.  Although Jayne now states it was not a good
decision, she conceded that at the time, she thought it was.  

A review of the record establishes that the evidence is
legally and factually sufficient to support an implied finding that the
appointment of Chuck as sole managing conservator is in the best interest of
the children.  Therefore, the trial court
did not abuse its discretion in appointing Chuck sole managing conservator.[3]  Accordingly, the judgment of the trial court
is affirmed.  

 

 

 

/s/        J. Harvey Hudson

Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion filed May 8, 2003.

Panel consists of
Chief Justices Brister and Justices Hudson and Fowler.











[1]  Former section
156.101 was amended in 2001.  Act of June
16, 2001, 77th Leg., R.S., ch. 1289, '  5,
2001 Tex. Gen. Laws 3108.  Amended
section 156.101 took effect on September 1, 2001, and applies to actions to
modify orders in suits affecting the parent-child relationship pending on
September 1, 2001, or filed thereafter. 
Act of June 16, 2001, 77th Leg. R.S., ch. 1289, ' 13, 2001 Tex. Gen. Laws 3111.  Because both Jayne=s and Chuck=s
respective petitions to modify were pending on September 1, 2001, we will
address the issues raised in this appeal under current section 156.101.  

The other optionsCthe children choosing their father to be the sole
managing conservator, and voluntary relinquishment by JayneCdo not apply in this case.  Tex.
Fam. Code Ann. ' 156.101.  





[2]  See Holley
v. Adams, 544 S.W.2d 367, 371B72 (Tex.
1976) (setting forth non-exhaustive list of factors to consider when
determining the best interest of the child in context of parental
termination).  





[3]  Jayne asserts
that appointing Chuck sole managing conservator is against public policy and an
abuse of discretion.  Because the
evidence is legally and factually sufficient to support implied finding of
material and substantial change in circumstances and that such appointment is
in the best interest of the children, the trial court did not abuse its
discretion and, in the absence of an abuse of discretion, such appointment is
not against public policy.