NO. 07-01-0294-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 13, 2002

_____


IN THE INTEREST OF C.R.O. AND D.J.O., MINOR CHILDREN

_____

FROM THE 387TH DISTRICT COURT OF FORT BEND COUNTY;

NO. 114,931; HONORABLE ROBERT J. KERN, JUDGE

_____

Before BOYD, C.J., and QUINN and REAVIS, JJ.

Appellant Jennifer Lee Hylton appeals the trial court's order modifying the parent-child relationship by restricting the minor children's primary residence to Fort Bend County, Texas or contiguous counties of Texas, as long as appellee William T. O'Brien resides in Fort Bend County or its contiguous counties. Presenting seven issues, Hylton questions whether: (1) the trial court abused its discretion in imposing a domicile restriction on the children's primary residence to the Fort Bend County area; (2) O'Brien presented sufficient evidence upon which the trial court could exercise its discretion; (3) the trial court abused

its discretion in restricting the children's residence to Fort Bend County or contiguous counties as long as O'Brien resides in that area; (4) the trial court's order infringes on her constitutional right to travel and to equal protection of the law; (5) the evidence is legally and factually sufficient to support findings of fact 18, 23, and 24; (6) she is entitled to abatement of the appeal until the court fulfills its duty to make complete and meaningful findings of fact; and (7) the trial court erred in failing to award her attorney's fees. Concluding that Hylton has not established a clear abuse of discretion by the trial court, based upon the rationale expressed herein, we affirm.

Hylton and O'Brien were divorced on May 5, 1997, in Georgia. At the time of divorce, the parties had two sons, C.R.O., who was seven, and D.J.O, who was almost four.[1] Child custody and other issues were resolved by settlement agreement. Pursuant to the Georgia decree, the parties were awarded joint legal custody, with Hylton having the right to primary physical custody. Soon after the divorce, Hylton remarried and moved with the children to Fort Bend County, Texas. Three months thereafter O'Brien moved to Melbourne, Florida for an employment opportunity as a health actuary.

Hylton's husband, who previously worked for Continental Airlines in Houston for seven years, resigned his position and accepted new employment with Hawaiian Air for a substantial pay increase. On July 18, 2000, Hylton notified O'Brien by e-mail of her

---

[1]After the divorce, Hylton and her husband had two daughters, half sisters to Hylton's sons.

2

husband's job offer and indicated that if he accepted the position, they would be relocating to Hawaii in September. On August 15, 2000, O'Brien filed a motion to modify the parent-child relationship alleging that the order had become unworkable or inappropriate under existing circumstances and requesting that the court restrict the domicile of the children to Fort Bend County, Texas. O'Brien also sought and was granted a temporary restraining order preventing, among other things, Hylton from removing the children beyond the court's jurisdiction. On August 20, 2000, Hylton's husband moved to Hawaii to begin his new employment and she and her four children remained in Fort Bend County. On September 1, 2000, in response to O'Brien's motion, Hylton filed her answer and counter-petition requesting an increase in child support. In November 2000, O'Brien rented an apartment in the Fort Bend County area and began more frequent visitation with his sons. O'Brien, however, did not leave his employment in Florida until the end of February 2001. After several hearings on temporary orders, on March 15, 2001, the trial court signed its order which, relevant to this appeal, restricts the children's domicile to Fort Bend County and the contiguous counties so long as O'Brien continues to reside in that area and increases the amount of child support.

We first address Hylton's sixth issue by which she requests that the appeal be abated and the cause remanded to the trial court to make and file more "complete and meaningful" findings of fact. She asserts that she has suffered harm by the trial court's refusal to make and file additional findings of fact as requested because it has prevented her from properly presenting her appeal. After the trial court filed its findings of fact and

conclusions of law, Hylton filed objections thereto and a request for additional findings of fact and conclusions of law as follows:

> the court should state the specific reasons for its finding that it is in the best interest of the children to restrict their domicile to Fort Bend County;
>
> the court should state the reasons the standard possession order for parents residing more than 100 miles apart would not provide appropriate visitation for William T. O'Brien were Jennifer Lee Hylton allowed to relocate; and
>
> the court should find that the attorney's fees incurred by Jennifer Lee Hylton are reasonable.

Following a proper request and reminder, it is mandatory for a trial court to make and file findings of fact and conclusions of law. Cherne Industries, Inc. v. Magallanes, 763 S.W.2d 768, 771 (Tex. 1989). The failure to respond where all requests have been made is presumed harmful, unless the record affirmatively shows no injury. *Id*; *see also* Tenery v. Tenery, 932 S.W.2d 29, 30 (Tex. 1996). The appropriate question in determining harm is whether a party will be forced to guess the reason or reasons that the trial court ruled against him. City of Los Fresnos v. Gonzalez, 830 S.W.2d 627, 629 (Tex.App.–Corpus Christi 1992, no writ).

Hylton contends that despite her request for additional findings, the trial court did not address what facts formed the basis of its decision that a domicile restriction would be in the best interest of the children. She argues that the trial court's refusal to make additional findings has placed her at a disadvantage in challenging the domicile restriction on appeal. We disagree. By Finding of Fact 23, which is specifically challenged by Hylton

4

as not being supported by legally and factually sufficient evidence, the trial court ordered a domicile restriction "based on the quality of the children's relationship with their father." As Hylton has challenged this finding, she has not shown harm or that she was prevented from properly presenting her complaint on appeal. Thus, we decline to abate the appeal and remand the cause to the trial court for further findings. Issue six is overruled.

Next, we continue our analysis by setting forth the appropriate standard of review. A trial court's modification order will not be disturbed on appeal unless the complaining party establishes a clear abuse of discretion. Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles, or whether it acted arbitrarily and unreasonably. Downer v. Aquamarine Operators, Inc. 701 S.W.2d 238, 241-42 (Tex. 1985). The fact that a trial court may decide a matter within its discretion in a different manner than an appellate court does not demonstrate that an abuse of discretion has occurred. *Id.* A trial court is in the best position to observe the demeanor and personalities of the witnesses that cannot be evaluated from a cold reading of the record. Warchol v. Warchol, 853 S.W.2d 165, 169 (Tex.App.–Beaumont 1993, no writ). Thus, as long as some evidence of a substantive and probative character exists to support the trial court's order, no abuse of discretion has occurred. Valdez v. Valdez, 930 S.W.2d 725, 731 (Tex.App.–Houston [1st Dist.] 1996, no writ).

The abuse of discretion standard in a family law case overlaps the traditional sufficiency standard of review. *See* Crawford v. Hope, 898 S.W.2d 937, 940 (Tex.App.–Amarillo 1995, writ denied) (holding that under the abuse of discretion standard, legal and factual sufficiency are not independent grounds of error, but are relevant factors in determining whether the trial court abused its discretion); *see also* Seidel v. Seidel, 10 S.W.3d 365, 368 (Tex.App.–Dallas 1999, no pet.); Doyle v. Doyle 955 S.W.2d 478, 479 (Tex.App.–Austin 1997, no pet.). Thus, in applying the abuse of discretion standard, an appellate court must engage in a two-pronged inquiry: (1) whether the trial court had sufficient evidence upon which to exercise its discretion, and (2) whether the trial court erred in applying its discretion. In re De La Pena, 999 S.W.2d 521, 525-26 (Tex.App.–El Paso 1999, no pet.). The traditional sufficiency review applies in the first inquiry and then a determination must be made whether the trial court's decision was neither arbitrary nor unreasonable. *Id*.

Findings of fact entered in a bench trial have the same force and dignity as a jury's verdict. In Interest of Striegler, 915 S.W.2d 629, 638 (Tex.App.–Amarillo 1996, writ denied); *Seidel*, 10 S.W.3d at 368. Thus, they are subject to legal and factual sufficiency challenges where there is a complete statement of facts in the record. *Striegler*, 915 S.W.2d at 638. In reviewing a legal sufficiency challenge, we must examine the record for any probative evidence which supports the finding while disregarding all evidence or reasonable inferences to the contrary. Holley v. Watts, 629 S.W.2d 694, 696 (Tex. 1982); Garza v. Alviar, 395 S.W.2d 821, 823 (Tex. 1965). A factual sufficiency challenge requires

6

us to examine the record to determine if there is some probative evidence to support the finding, and then determine whether, in light of the entire record, the finding is manifestly unjust. Traylor v. Goulding, 497 S.W.2d 944, 945 (Tex. 1973); In re King's Estate, 150 Tex. 662, 244 S.W.2d 660, 661-62 (1951).

In determining conservatorship and possession issues, the best interest of the child shall always be the primary consideration. Tex. Fam. Code Ann. § 153.002 (Vernon 1996).[2] In addition, the trial court should also seek to implement the public policy of this State which is to:

> (1) assure that children have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;
>
> (2) provide a safe, stable, and nonviolent environment for the child; and
>
> (3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

§ 153.001(a) (Vernon Supp. 2002). The burden of proof by the movant in a motion to modify the parent-child relationship is by a preponderance of the evidence. § 105.005 (Vernon 1996). A court may modify a joint managing conservatorship upon a showing of material or substantial change or that the order to be modified has become unworkable or

---

[2]Unless otherwise designated, all section references are to the Texas Family Code.

7

inappropriate under existing circumstances, and that modification would be a positive improvement for and in the best interest of the child. § 156.202 (Vernon 1996).[3]

By her first, second, third, and fifth issues, Hylton asserts abuse of discretion by the trial court in imposing a domicile restriction on the children's primary residence to the Fort Bend County area and challenges the legal and factual sufficiency of the evidence to support the following findings of fact:

18.     The Court finds that in January 2001, [O'Brien] resigned from his employment in Melbourne, Florida and incorporated a business in Texas.

* * *

21.     The Court finds that it is in the best interest of the children that their domicile be restricted to Fort Bend County, Texas or contiguous counties thereto, so long as [O'Brien's] primary residence is Fort Bend County, Texas or contiguous counties thereto.

22.     The Court finds that [O'Brien] has maintained frequent and consistent contact with the children since the date of divorce on May 5, 1997, in spite of the distance between [O'Brien's] residence and that of the children.

23.     The Court finds that based on the quality of the children's relationship with their father, it is in the best interest of the children that their domicile be restricted to Fort Bend County, Texas or contiguous counties thereto.

24.     The Court finds that if the children moved [sic] to Hawaii, their relationship with their father would be detrimentally impacted and possession and access would be practically nullified since there would

---

[3]The Legislature repealed section 156.202 effective September 1, 2001. However, because O'Brien's motion to modify was filed before the effective date, section 156.202 applies. *See* Act of May 22, 2001, 77th Leg., R.S., ch. 1289, §§ 12(2) and 13, 2001 Tex. Gen. Laws 3108, 3111.

be at least thirty-two hours of travel time during their periodic period of access with their father.

25. The Court finds that the children's intended move to Hawaii would not have been in their best interest in that their relationship and contact with their father would be severely impacted.

26. The Court finds it is in the best interest of the children that the domicile restriction imposed in the *Order in Suit to Modify Parent-Child Relationship* signed on March 13, 2001, be removed if [O'Brien] no longer primarily resides in Fort Bend County, Texas or contiguous counties thereto.

Evidentiary review in a relocation case is fact specific and each case must be evaluated on its own unique facts. Confronted with a case of first impression, the Court analyzed relocation cases from other jurisdictions to develop guidelines for reviewing a modification order that removed a domicile restriction. Lenz v. Lenz, 45 Tex. Sup. Ct. J. 781, 2002 LEXIS 75, at *10 (Tex. June 6, 2002).[4] In conducting such a review, we must endeavor to give meaning to the public policy imperatives of section 153.001(a) of the Family Code keeping in mind that the primary consideration is the best interest of the children. *Id*. at *9. In discussing three cases, the Court considered the following factors:

> reasons for and against the move; education, health, and leisure opportunities; accommodation of special needs or talents of the children; effect on extended family relationships; effect on visitation and communication with the noncustodial parent; the noncustodial parent's ability to relocate; Baures v. Lewis, 167 N.J. 91, 770 A.2d 214, 229-30 (N.J. 2001);
>
> parent's good faith in requesting the move; continuation of a meaningful relationship with the noncustodial parent; economic,

---

[4]Although this appeal concerns the trial court's imposition of a domicile restriction, the factors reviewed in *Lenz* are instructive.

9

emotional, and education enhancement for the children and the custodial parent; effect on extended family relationships; Tropea v. Tropea, 87 N.Y.2d 727, 665 N.E.2d 145, 149-51, 642 N.Y.S.2d 575 (N.Y. 1996); and

employment and education opportunities of the parents; the ages of the children; community ties; health and educational needs of the children; In re Marriage of Burgess, 13 Cal. 4th 25, 913 P.2d 473 (Cal. 1996).

As movant, O'Brien alleged a material and substantial change in circumstances, that the prior order had become unworkable or inappropriate because Hylton was planning to relocate to Hawaii, and that the requested modification would be in the best interest of the children. We must decide whether O'Brien satisfied his burden by presenting some evidence of a substantive and probative character to support the trial court's imposition of a domicile restriction. While Texas has not addressed whether relocation, standing alone, qualifies as a material and substantial change in circumstances, where, as here, the custodial parent wishes to move a significant distance, a finding of changed circumstances may be appropriate. Bates v. Tesar, 2002 Tex.App. LEXIS 4130, at *46 (Tex.App.–El Paso June 6, 2002, no pet. h.), citing Jaramillo v. Jaramillo, 113 N.M. 57, 823 P.2d 299 (1991). Also, since the rendition of the Georgia order, O'Brien established that Hylton remarried and moved to Texas, his sons have two half sisters, and a move to Hawaii would make their custody arrangement unworkable or inappropriate.

It is undisputed that Hylton is a full time caregiver to her sons and that she is completely devoted to their needs. O'Brien shares a close relationship with his sons and

10

he has regularly exercised his periods of possession and access. O'Brien explained that any missed visitation was work-related. Neither the education nor the physical health of the children is at issue. Hylton acknowledged at trial that a move to Hawaii would impact the relationship O'Brien has with his sons and that O'Brien and his youngest son share a strong bond. Before the modification proceeding, Hylton and O'Brien enjoyed a harmonious relationship for divorced parents and were able to work through any difficulties.

O'Brien resigned his position in Florida effective at the end of February 2001, and then filed Articles of Incorporation in Texas for Strategic Health Associates, Inc. In March 2001, he obtained a Texas driving permit. Once settled in Texas, O'Brien enjoyed more frequent and consistent contact with his children. However, he testified that if the domicile restriction was lifted and Hylton moved to Hawaii, he would relocate to Florida because he would have no reason to stay in Texas. O'Brien considered a parallel move to Hawaii and contacted a headhunter and searched through a Society of Actuary membership book for possible employment opportunities, but was unable to find a health actuary position.

O'Brien presented evidence that during a typical three-day weekend, one-way flight travel from Hawaii to Florida would take ten hours and thirty-nine minutes plus driving time. Assuming no delays or cancellations, O'Brien estimated that he would share only 36 hours with his sons, including time for sleeping. Due to the time difference O'Brien anticipated that the boys would be tired and probably sleep during his waking hours. Due to the expense of airline travel, his sons usually travel standby unaccompanied by an adult for

11

a reduced fare available through Hylton's husband's employment. The evidence established that from where Hylton would reside in Hawaii, there was only one flight to Houston per day with no guarantee of a seat or connection in Houston to Florida when flying standby. Hylton conceded that regardless of whether the boys or O'Brien traveled, it would be "very straining," and a missed flight would make it impossible to have meaningful visitation.

O'Brien also expressed concern about the stability of Hylton's marriage. Hylton testified that in April 1999, she discovered that her husband had committed an indiscretion with another woman and informed O'Brien that she was having marital problems. However, according to Hylton, she and her husband sought counseling and renewed their wedding vows in May 2000. She testified that they are dedicated to a strong, positive household.

The evidence established that the boys have had nine residences in eight years, with their home in Texas for three years being the longest period of residency. Both sets of grandparents have homes in Florida and O'Brien's mother cares for the boys during summer visitation periods. Hylton's sister and the boys' cousins reside in San Antonio and visit every two to three months. Hylton's husband's parents live in Harris County and visit twice a month. No one involved in this litigation has any friends or family in Hawaii.

O'Brien testified that his primary concern should the boys move to Hawaii is that he will be "phased out" of their lives due to a lack of meaningful and frequent contact.

Although Hylton testified that frequent contact could be maintained by regularly scheduled telephone calls, videos, and e-mails in addition to visitation, O'Brien claimed that there is no substitute for face-to-face contact and that Hylton's suggestions do not encourage "real communication." O'Brien also expressed concern that because of the time difference,[5] there could be no assurance of frequent contact especially by telephone. Summer and holiday visitation time would not be frequent enough to maintain the type of relationship he currently enjoys. Additionally, O'Brien testified that the time difference would make it difficult for he and Hylton to effectively co-parent their children.

Hylton presented expert testimony from Barbara Candley, a psychologist who met with the younger son five times and with the older son three times. The younger son was treated for depression in 1999. After treatment and medication, he showed improvement. According to Candley, the younger son is very fragile and vulnerable and might not be able to cope with a move, but for his mother's devotion. On cross-examination by the ad litem, Candley admitted that O'Brien shares a positive relationship with his sons and that his younger son will need consistent contact for reassurance. The older child is confident, emotionally strong, and desires to move to Hawaii.

Hylton's husband works in aircraft acquisitions and market planning. He resigned his position with Continental Airlines in Houston for an increase in pay of $50,000 and a

---

[5]Because Hawaii does not recognize daylight savings time there would be times when the time difference would be five hours and other times six hours.

13

relocation bonus of $20,000. He moved to Hawaii and began his new job in August 2000. On November 27, 2000, the Hyltons executed a contract of sale and deposited $5,000 on a house in Hawaii. Hylton testified that the benefits of moving to Hawaii included financial stability, a nice home, a smaller city with less pollution, travel adventures for the family to places like Seattle, Tahiti, Guam, and China, and a less demanding job for her husband. However, she testified that if a domicile restriction was imposed, her husband would return to Texas, but would probably experience difficulty in seeking employment. She feared financial devastation because the $20,000 relocation bonus would have to be returned. Additionally, her husband's occupation requires that he work where an airline is based, and Continental being the only Houston-based airline, she was not optimistic that he would be rehired. She noted that the next closest city where he could seek employment would be Dallas.

In considering whether the court's imposition of a domicile restriction to the Fort Bend County area was proper, in addition to the public policy of this State, we also apply the *Holley* factors–a non-exhaustive list of considerations for determining the best interest of the children. Holley v. Adams, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the individuals involved, the programs available to those individuals to promote the best interest of the children, the plans for the children by these individuals, the stability of the home, the acts or omissions of the parent which may indicate that the

14

existing parent-child relationship is not proper, and any excuse for the acts or omissions of the parent. *Id.*

Closely scrutinized, the reasons for moving to Hawaii include financial stability, travel and leisure opportunities, the desire of the older son, and the stability of the post-divorce family unit. However, the best interests of the children and the public policy of this State are served if O'Brien is permitted to maintain meaningful frequent and continuing contact and is able to share in the rights and duties of raising his children in a stable environment. § 153.001(a). O'Brien met his burden and established that the domicile restriction is a positive improvement and in the best interest of the children for reasons such as continuing close contact with his children, promoting relationships with grandparents and relatives, a stable environment after nine residence changes, and fostering the younger child's emotional and mental well-being. Hylton's financial considerations for moving to Hawaii are outweighed by the needs of the children to have frequent and continuing contact with their father. *Bates*, 2002 Tex.App. LEXIS 4130, at *49. The evidence presented by O'Brien was of substantive and probative character upon which the trial court was able to exercise its discretion, and thus, we cannot conclude that the trial court misapplied its discretion. Thus, there being some evidence to support the trial court's findings and its order restricting the domicile of the children to the Fort Bend County area, we conclude that Hylton has not established a clear abuse of discretion by the trial court. Issues one, two, three, and five are overruled.

15

By her fourth issue, Hylton contends that the imposition of a domicile restriction infringes on her constitutional right to travel and to equal protection of the law. We disagree. The right to travel encompasses three different components: (1) the right to enter and leave another State; (2) the right to be treated as a welcome visitor while temporarily present in another State; and (3) for those travelers who elect to become permanent residents, the right to be treated like citizens of that State. Saenz v. Roe, 526 U.S. 489, 490, 119 S.Ct. 1518, 143 L.Ed.2d 689 (1999). The domicile restriction imposed by the trial court applied only to the children and did not affect Hylton's ability to exercise any of the aforementioned rights. Also, the contention that a domicile restriction infringes on a parent's constitutional right to travel was rejected by two of our sister courts in Bates v. Tesar, 2002 Tex.App. LEXIS 4130 (Tex.App.–El Paso June 6, 2002, no pet. h.), and Lenz v. Lenz, 40 S.W.3d 111, 118 n.3 (Tex.App.–San Antonio 2000), *rev'd on other grounds*, 45 Tex. Sup. Ct. J. 781, 2002 LEXIS 75 (Tex. June 6, 2002). In *Bates*, citing *Lenz*, the court held that the mother's constitutional right to travel was not violated by the trial court's order requiring the children to relocate back to where their father resided because the benefits in removing the children to reside with their mother was outweighed by the importance of having continued contact with their father. *See also* § 153.001(a)(1) (Vernon Supp. 2002) (providing that the public policy of this State is to assure that children will have frequent and continuing contact with parents who have shown the ability to act in their best interest). Thus, weighing the benefits of relocating the children to Hawaii against the importance of having continued contact with their father, we find that the

16

domicile restriction imposed by the trial court did not violate Hylton's constitutional right to travel. A review of the record demonstrates that Hylton apprised the trial court of the infringement of her constitutional right to travel in her objections to the judgment; however, she did not raise her equal protection contention below. Thus, she has waived that portion of her issue on appeal. Hollified v. Hollified, 925 S.W.2d 153, 156-57 (Tex.App.–Austin 1996, no writ). Issue four is overruled.

By her seventh issue, Hylton contends the trial court erred in failing to award her attorney's fees. We disagree. An award of attorney's fees in a suit affecting the parent-child relationship is discretionary with the trial court. § 106.002 (Vernon Supp. 2002); *see also* Bruni v. Bruni, 924 S.W.2d 366, 368 (Tex. 1996). The trial court's order provides:

> IT IS ORDERED that each party shall be responsible for his or her own attorney's fees incurred as a result of legal representation in this case.

> IT IS FURTHER ORDERED that each party shall pay fifty percent (50%) of attorney fees owed to Sally Brown as a result of her representation in this case as Guardian Ad Litem for the children upon presentation of her itemized statements.

Both parties in the underlying suit sought affirmative relief from the trial court. O'Brien filed his motion seeking to modify the terms and conditions for access to or possession of the children and for imposition of a domicile restriction. He later amended his motion and requested that he be appointed primary joint managing conservator. Hylton filed her counter-petition seeking to have child support increased. O'Brien was successful

17

in having the trial court impose a domicile restriction and Hylton was successful in having the amount of child support increased. Thus, we find the trial court did not abuse its discretion in requiring each party to be responsible for their own attorney's fees and for fifty percent of the guardian ad litem's fees. Issue seven is overruled.

Accordingly, the judgment of the trial court is affirmed.

Don H. Reavis
Justice

Quinn, J., concurring.

Publish.

NO. 07-01-0294-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

SEPTEMBER 13, 2002
_____

IN THE INTEREST OF C.R.O. AND D.J.O., MINOR CHILDREN
_____

FROM THE 387TH DISTRICT COURT OF FORT BEND COUNTY;

NO. 114,931; HON. ROBERT J. KERN, PRESIDING
_____

***Concurring Opinion***
_____

Before BOYD, C.J., QUINN and REAVIS, J.J.

I concur, in general, with the opinion of the majority but write separately to further clarify my reasons for affirming the decision of the trial court.

First, though Jennifer Lee Hylton complains of the directive requiring her two children with William O'Brien to live in Fort Bend County or counties contiguous thereto, she does so in a most restrictive way. That is, the framework in which her issues are cast is quite limited and limiting. She is not complaining about being unable to domicile her children anywhere other than those particular counties. Rather, she simply questions the restriction to the extent it prevents the youths from moving across the globe to Hawaii.

And, therein lies the rub. Given the applicable standard of review of abused discretion, *Seidel v. Seidel,* 10 S.W.3d 365, 368 (Tex. App - - Dallas 1999, no pet.), and the deference we must accord the trial court's fact findings, I too believe that evidence and authority supports that court's implicit decision *viz* domicile in Hawaii. The same is not necessarily true regarding domicile anywhere other than Fort Bend County and those counties contiguous with it. But, since Hylton does not attack the restriction on the ground that it prevents the children from living in locales other than Hawaii, the issue of whether the directive is overly restrictive in general is not before us.

Second, to the extent that Hylton asserts that the trial court's directive also violates her right to equal protection, I find the argument insufficiently briefed. She offered no substantive analysis or authority explaining how that right was violated. TEX. R. APP. P. 38.1(h); *In re Williams,* 998 S.W.2d 724, 730 (Tex. App. - - Amarillo 1999, no pet.) (holding that the failure to accompany an issue with substantive analysis or citation to legal authority results in the waiver of that issue).

Third, as to the assertion that her purported constitutional right to travel to Hawaii is contravened, I cannot overrule the issue by concluding that the restriction impedes the children's mobility, as opposed to Hylton's. Like the Supreme Court in *Ex parte Rhodes*, 163 Tex. 31, 352 S.W.2d 249 (Tex. 1961), I too recognize that a mother would not likely move without her child. *Id.* at 251. Nor do I find acceptable the alternative that in return for moving to Hawaii, she must relinquish custody of her children.

Nevertheless, the truism that no right is absolute is also something I cannot ignore. And, to be weighed against Hylton's alleged right to live in Hawaii are, at the very least, 1) the State's interest in having both parents share the duty of raising their offspring, *Lenz v. Lenz*, 79 S.W.3d at 14 (acknowledging this to be an aspect of the public policy of Texas), 2) the father's interest in interacting with his children, *Id.* at 18, and 3) the children's interest in interacting with both their parents. Hylton addressed none of the countervailing factors in her argument. Nor does she suggest that other reasonable measures could have been enacted which were of lesser preclusive affect and which furthered the interests of all involved to the greatest extent possible. Instead, she merely implies that her right to travel is preeminent. With this, I cannot agree. Simply put, a state's interest in assuring that children have meaningful interaction with both parents (assuming the parents have not somehow abused or legally lost that opportunity) is sufficiently compelling to temper Hylton's purported right to live in Hawaii. *See Dupree v. Texas Dept. of Protective and Regula*tory *Services*, 907 S.W.2d 81 (Tex. App. - - Dallas 1995, no writ) (holding the goal of establishing a stable, permanent home for a child is a compelling interest of the government which includes preserving the parent-child relationship.)

Brian Quinn
Justice

Publish.

21