NO. 07-02-0460-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

JANUARY 2, 2004
_____

JAMES BERGMAN,

Appellant

v.

BERGMAN-DAVISON-WEBSTER CHARITABLE TRUST,
GENE BUSH, trustee, and CAROLYN NIXON, trustee,

Appellees
_____

FROM THE 411th DISTRICT COURT OF POLK COUNTY;

NO. CIV 19,791; HON. JACK R. KING, PRESIDING
_____

***Memorandum Opinion***
_____

Before JOHNSON, C.J., and QUINN and CAMPBELL, JJ.

James Bergman (James) appeals from a final judgment removing him as a trustee and modifying the terms of the Bergman-Davison-Webster Charitable Trust (Trust). Five issues are presented for our review. However, we need only address the first since it is dispositive. Therein, James asserts that no evidence, or alternatively, insufficient

evidence supports the trial court's decision to remove him as trustee of the Trust. We affirm the decision of the trial court.

### *Removal as Trustee*

Statute provides a trial court various grounds on which to remove a trustee. That applicable here concerns removal for "cause." That is, a trustee may be removed "in the discretion of the court, for . . . cause." TEX. PROP. CODE ANN. §113.082(a)(4) (Vernon Supp. 2004). While the ill will or hostility of a trustee is generally insufficient cause, it becomes so if it is determined that the "hostility, ill will, or other factors have affected the trustee so that he cannot properly serve in his capacity." *Akin v. Dahl*, 661 S.W.2d 911, 913-14 (Tex. 1983); *Lee v. Lee*, 47 S.W.3d 767, 792 (Tex. App.--Houston [1st Dist.] 2001, pet. denied). In other words, if the evidence illustrates that the hostility "does or will affect" the trustee's performance of his duties, then cause exists for his removal. *Id.*

Additionally, the hostility to which we refer is not limited only to situations wherein the trustee's performance is affected. It also includes those wherein it impedes the proper performance of the trust, especially if the trustee made the subject matter of the suit is at fault. *Restatement (Third) of the Law of Trusts*, §37, comment e(1) (2003); A. Scott & W. Fratcher, *The Law of Trusts* §107, p. 111 (4th ed. 1987).

Next, it has been the rule for some time that the decision regarding whether or not to remove a trustee is not one that implicates the trial court's discretion. As the Supreme Court said in *Akin*, the applicable statutory provisions did not make removal a discretionary

2

act. *Akin v. Dahl*, 661 S.W.2d at 913. However, the legislature recently amended §113.082(a) of the Property Code. The provision now states that ". . . on the petition of an interested person and after hearing, a court may, *in its discretion*, remove a trustee" upon the enumerated grounds. TEX. PROP. CODE ANN. §113.082(a) (emphasis added). The italicized portion of the statute was non-existent when the Supreme Court decided *Akin*. Given the plain meaning of the phrase, it is clear that the legislature now wants the trial court to exercise its discretion when determining whether to remove a trustee. So, the statement in *Akin* that the decision does not implicate the trial court's discretion has been overruled by statute.

Question does arise, however, regarding whether the amendment to §113.082(a) applies to the case at bar. Indeed, it is clear that the suit was filed long before September 1, 2003, the effective date of the amendment. So too is it recognized that statutes and their amendments generally have prospective effect; that is, the amendments do not normally operate retroactively. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 219 (Tex. 2002). Yet, that is not true when the statute or amendment is procedural or remedial in nature. *Id.* Furthermore, a change that affects the power of the court to act is one involving procedure. *Id.* at 220 (holding jurisdictional statutes to be procedural because they "speak to the court's power rather than to the parties' rights or obligations"). Next, it would seem that an amendment vesting the trial court with the "discretion" to make a particular ruling would be of that ilk. This is so because the amendment affects the power of the court to act over a given matter as opposed to the

rights or obligations of the parties. In other words, it establishes not only the parameters within which the trial court must make its decision but also the standard of review we utilize in determining whether the decision was correct. And, because it does, we conclude that the amendment to §113.082(a) is both procedural and applicable to the appeal before us. Thus, whether the trial court erred in removing James as trustee depends on whether it abused its discretion.

Next, a trial court abuses its discretion when it acts without reference to any guiding rules and principles or when it acts arbitrarily and unreasonably. *In re C.R.O.*, 96 S.W.3d 442, 446 (Tex. App.--Amarillo 2002, no pet.). That the decision may be different than the one we may have reached had we decided the matter in the first instance is not controlling. *Id.* Instead, it must be affirmed if it enjoys the support of law and some probative evidence irrespective of what we may think of it. *Id.* at 446-47.[1] With that said, we turn to the issue before us.

Upon the death of Secrest Webster in 1995 the Trust arose. According to the instrument creating it, James and five others were appointed its trustees. They were assigned the duty of disbursing the corpus and income thereon "at such time, in such manner, and in such amounts as they deem advisable, to provide scholarships or grants to worthy individuals to assist them in obtaining instruction or education . . . ." So too were

---

[1]Given that the decision must be affirmed if it comports with the law and enjoys the support of some evidence, no longer are claims of legal and factual insufficiency independent grounds of error. *In re C.R.O.*, 96 S.W.3d 442, 447 (Tex. App.--Amarillo 2002, no pet.); *Crawford v. Hope*, 898 S.W.2d 937, 940 (Tex. App.--Amarillo 1995, writ denied). Instead, dispute about the quantum of evidence supporting a particular decision is subsumed into the test of abused discretion. *Crawford v. Hope*, 898 S.W.2d at 940 -41.

4

they authorized to use the trust assets "for other purposes that will promote, assist and further the cultural, artistic, educational, literary, recreational, charitable and historical activities and facilities . . . [of] Livingston and Corrigan, Texas and Polk County." Though once harmonious, the trustee meetings convened to fulfill these goals became less so over time, and according to the trial court, James "figured prominently in much of the confusion and discord that occurred in the meetings and prevented said board from functioning in an orderly manner."

For instance, several witnesses, who were also board members, testified that James did not follow the majority's vote. He also opted and continued to tape record trustee meetings despite the fact that a majority of the trustees disapproved of it. This act cast a chill upon the conversation of the trustees. At least one witness stated that it became "impossible to have a decent conversation," that the taping was "disruptive," and that it precluded the trustees from expressing "sensitive data or ideas . . . ." "You can't express a devil's advocate type position . . . because somebody will take that out of context and can be devastating to you," he opined.

Additionally, two witnesses described an instance wherein James sought to use his position as a trustee to further his son's interests. The incident involved James' attempt to induce them, through the use of a "[k]ind of threatening tone," into approving scholarships to a set of young applicants. The latter apparently were children of an individual who had a job for James' son. According to one trustee, James told them that the father of the applicants had "'a very good job that [James' son could] have if the . . .

5

[particular applicants] get these scholarships.'" His son's "'whole future depended on getting this job.'" And, though the trustees did not vote on the applications, James' conduct grew more "intolerable" thereafter, so testified a trustee.

In another instance, trustees described how James made statements in an affidavit they believed to be false in effort to secure a restraining order against them. The order was needed to prevent a sale of trust property with which James disagreed.

Several other witnesses described how James used profanity and intimidation during the meetings. So too did he threaten his fellow trustees with suit if they did not agree with him. He would become "hostile" and "rude" when the trustees "don't do what he wants to do right then . . . if we disagree[d]." When asked if she felt threatened by him, a trustee replied: "[h]e scares me . . . [h]e just gets so upset, and so violent . . . and it just gets worse and worse." Another testified that James' conduct caused him to leave a trustee meeting. The environment was not one "in which trustees can work," he opined. It gave him "a stomach ache every time [he went] to a meeting." And, that the environment was not conducive to the performance of trust duties was confirmed by another trustee when she told the trial court that the meetings were "not a very pleasant experience" and that it was not possible to conduct trust business under the circumstances.

The foregoing litany of testimony provides some probative evidence upon which a trial court could reasonably conclude not only that James caused hostility and friction within the board meetings but also that his conduct affected or impeded the operation of

6

the Trust.  Admittedly, James attempted to justify his conduct at trial.  Yet, his credibility, like that of the other witnesses, was something the trial court, as factfinder, was entitled to assess.[2]  And, that there may have been other evidence suggesting that his actions were legitimately motivated does not alone entitle us to hold the trial court's decision to remove him as an instance of abused discretion.  This is so because discretion is not abused where the trial court bases its decisions on conflicting evidence.  *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978).  So, as long as the ruling comported with guiding principles and enjoyed the support of some probative evidence, we cannot change it.  That is the case here; so, we overrule James' first issue.

Our having upheld the trial court's decision to remove James as trustee leaves no one else to complain of its judgment.  He can no longer do so given that he now is neither a trustee nor beneficiary of the Trust.  *See Lemke v. Lemke*, 929 S.W.2d 662, 664 (Tex. App.--Fort Worth 1996, writ denied).  And, while other trustees were also removed, none of them appealed.  Nor has any beneficiary of the trust perfected an appeal.  Consequently, the remaining issues presented by James are moot.

We affirm the judgment of the trial court.

---

[2]We recognize that the office of trustee carries with it fiduciary duties.  So too do we understand that trustees are entitled to opinions independent from the other trustees and must voice them when they believe something is wrong.  Yet, that does not entitle the dissenting individual to become so hostile or violent that the effective operation of the trust is impeded.  Persistence and persuasion are the characteristics to be invoked to correct perceived error.  Litigation may also be an alternative.  But, violence, hostility, profanity, or intimidation are not, especially when they impede trust purposes.

Brian Quinn
Justice