

## NUMBER 13-11-00457-CV

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI - EDINBURG

## IN THE INTEREST OF B.A.B., C.M.B., AND T.D.B., CHILDREN

**On appeal from the 378th District Court
of Ellis County, Texas.**

## MEMORANDUM OPINION[1]

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Rodriguez**

Appellant Jacob Daniel Belk, the father of B.A.B., C.M.B., and T.D.B., appeals from an order granting appellee Keelee Waynette Allen's petition to modify the parent-child relationship as to the geographical restriction on the children's primary

---

[1] All issues of law presented by this case are well settled, and the parties are familiar with the facts. Therefore, we will not recite the law or the facts in this memorandum opinion, except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

residence.[2]  By three general issues which we construe as two, Belk contends (1) there was insufficient evidence to establish that the modification would be in the best interest of the children, and (2) the trial court abused its discretion in determining that the modification was warranted.   We affirm.

## I.  BACKGROUND

Allen filed a petition to modify the parent-child relationship.  The basis for the petition was to seek removal of the geographical restriction which limited the children's residency to certain counties in Texas.   After hearing testimony from several witnesses and arguments of counsel, the trial court granted Allen's motion to modify and entered an order setting out that the entry of a new order modifying the current geographic restriction would be in the best interest of the minor children and that Allen had the exclusive right to designate the primary residence of the children within the United States of America.   The trial court entered findings of fact and conclusions of law.  Belk appeals from the modification order.

## II.  APPLICABLE LAW

A trial court may order a modification of a prior order when modification would be in the best interest of the child and the circumstances of the child or conservator have materially and substantially changed since rendition of the prior order.[3]  *See* TEX. FAM. CODE ANN. § 156.101(a)(1)(A) (West Supp. 2010).   The best interest of the child shall always be the primary consideration of the court when considering issues of

---

[2] The case is before this Court on transfer from the Tenth Court of Appeals in Waco pursuant to an order issued by the Supreme Court of Texas.   *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[3] Belk challenges only the trial court's finding that the modification was in the best interest of the children.   He does not challenge the court's finding that the circumstances have materially and substantially changed.

2

conservatorship. *See id.* § 153.002 (West 2008); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000).

Many factors can bear on the determination of a child's best interest in the context of residency restrictions and relocation including the general factors relevant to the best interest of a child, such as (1) the child's desires; (2) the child's current and future physical and emotional needs; (3) any physical or emotional danger to the child in the present or future; (4) the parental abilities of the individuals involved; (5) the programs available to those individuals to promote the child's best interest; (6) the plans for the child by these individuals; (7) the stability of the home; (8) acts or omissions by a parent tending to show that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976); *In the Interest of A.P.P.*, 74 S.W.3d 570, 575 (Tex. App.—Corpus Christi 2002, no pet.); *see also In re D.W.K.*, 2005 Tex. App. LEXIS 6784, *17-19 (Tex. App.—Corpus Christi Aug. 22, 2005, no pet.) (mem. op.). These considerations are neither exhaustive nor do all such considerations have to be proved as a condition precedent to a best interest determination. *In the Interest of C.H.*, 89 S.W.3d 17, 27-28 (Tex. 2002) (noting that every "best interest" factor need not be found).

In addition, as recognized by the Texas Supreme Court in *Lenz v. Lenz*, "[t]he Legislature has provided a basic framework upon which we may build guidelines for reviewing a modification that removes a residency restriction for purposes of relocation." 79 S.W.3d 10, 14 (Tex. 2002). That framework, outlined in section 153.001 of the Texas Family Code, provides that the public policy of Texas is to,

3

(1) assure that children will have frequent and continuing contact with parents who have shown the ability to act in the best interest of the child;

(2) provide a safe, stable, and nonviolent environment for the child; and

(3) encourage parents to share in the rights and duties of raising their child after the parents have separated or dissolved their marriage.

TEX. FAM. CODE ANN. § 153.001(a) (West 2008); *Lenz*, 79 S.W.3d at 14.

The *Lenz* Court also noted, and considered, a wide array of other factors relevant to the determination of a child's best interest in the relocation context, including the following:

- reasons for and against the move; education, health, and leisure opportunities; accommodation of special needs or talents of the children; effect on extended family relationships; effect on visitation and communication with the noncustodial parent; the noncustodial parent's ability to relocate;

- parent's good faith in requesting the move; continuation of a meaningful relationship with the noncustodial parent; economic, emotional, and education enhancement for the children and the custodial parent; effect on extended family relationships; and

- employment and education opportunities of the parents; the ages of the children; community ties; health and educational needs of the children.

*In re C.R.O.*, 96 S.W.3d 442, 449 (Tex. App.—Amarillo 2002, pet. denied) (citing *Lenz*, 79 S.W.3d at 15-16 (citations omitted)). Like the supreme court, "[w]e must endeavor to give meaning to these public policy imperatives as we interpret the [f]amily [c]ode modification standards in the relocation context." *Lenz*, 79 S.W.3d at 14.

4

## IV. STANDARD OF REVIEW

A trial court's modification order is reversed only when it appears from the record as a whole that the trial court abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re C.R.O.*, 96 S.W.3d at 446. A trial court abuses its discretion if it acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241 (Tex. 1985).

Here, Belk claims that the trial court abused its discretion in granting the modification because the evidence was not sufficient to support such order. In reviewing modification of rights under an abuse of discretion standard, while legal and factual sufficiency issues are not independent grounds of error in cases of this nature, they are factors which can be considered in determining whether an abuse of discretion has occurred. *In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g).

In determining whether an abuse of discretion has occurred because the evidence is legally or factually insufficient to support the trial court's decision, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* (citing *In re D.S.*, 76 S.W.3d 512, 516 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *Norris v. Norris*, 56 S.W.3d 333, 338 (Tex. App.—El Paso 2001, no pet.); *Lindsey v. Lindsey*, 965 S.W.2d 589, 592 (Tex. App.—El Paso 1998, no pet.)). The sufficiency review is related to the first inquiry. *Id.* If it is revealed in the first inquiry that there was sufficient evidence, then we must determine whether the trial court made a reasonable decision. *Id.*;

5

*Lindsey*, 965 S.W.2d at 592.

In a legal sufficiency review, we view the evidence in the light most favorable to the finding and indulge every reasonable inference that would support the trial court's findings, crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence unless a reasonable factfinder could not. *City of Keller v. Wilson*, 168 S.W.3d 802, 822, 827 (Tex. 2005). The evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id.* at 827-28. We may sustain a no-evidence challenge only when (1) the record discloses a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the only evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 810. In reviewing the factual sufficiency of the evidence, we examine all of the evidence and set aside a finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

Because the trial court faces the parties, observes their demeanor, and has an opportunity to evaluate the claims made by each parent, the trial court is given wide latitude in determining the child's best interest. *Gillespie*, 644 S.W.2d at 451; *In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.) (giving deference to the trial court because it is in the best position to observe the demeanor of the witnesses and evaluate their credibility). "The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar

6

circumstance does not demonstrate that an abuse of discretion has occurred." *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Downer*, 701 S.W.2d at 242). "Consequently, an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. There is generally no abuse of discretion if some evidence supports the decision." *Id.*

## III. DISCUSSION

## A. Sufficiency of the Evidence to Support a Best Interest of the Child Finding

By his first issue, Belk asserts that the evidence does not support a finding that the modification of the geographical restriction is in the best interest of the children. Belk contends that the evidence is legally insufficient because (1) there is no evidence to support a best-interest finding, and (2) the trial court disregarded all evidence or reasonable inferences that conclusively established the opposite. Belk also asserts a factual-sufficiency challenge, contending that the finding is against the great weight of the evidence.

### 1. Undisputed Findings

The following findings of fact are not challenged by Belk:

3.      [Allen] and [Belk] were divorced on July 9, 2009;

4.      [Allen] and [Belk] are joint managing conservators of the children;

5.      [Allen] has the right to designate the children's primary residence;

6.      The residence of the children is currently limited to Ellis and contiguous counties or McLennan County, Texas;

7.      [Allen] is now married to Seth Allen who is on active duty and a Sargent [sic] in the United States Marine Corps. . . .   [Allen] and Sgt. Allen have known each other since they were 12 years old;

7

8. [Allen] is the children's minister in a local Methodist church;

. . . .

11. There is no Marine base in Ellis or contiguous counties or in McLennan [C]ounty, Texas;

. . . .

13. [Allen] has proven her commitment to encouraging access between the children and [Belk] by arranging visits outside the standard possession order to accommodate his unconventional work schedule;

14. [Allen] will encourage video/internet ("SKYPE") connections, e-mail accounts[,] and cell telephone communications for the children to have frequent contact with [Belk]. [ ] [T]he oldest child will be provided with a cell phone;

15. [Allen] is prepared to comply with visitation provisions for parents living over 100 miles apart by flying the children once a month to the residence of their father any weekend of his choice;

16. [Belk] is a store manager employed by Wal-Mart;

. . . .

18. [Belk] lives with his parents;

. . . .

22. [Belk's] girlfriend explained [Belk's] and her sleeping arrangements to the children;

23. Neither [Belk] nor [Belk's] girlfriend view their cohabitation as a moral issue;

. . . .

25. [Belk] has had possession of his children by mutual agreement with [Allen] on his days off work;

. . . .

8

29.     [Belk] does not know the names of his children's teachers; and,

30.     [Belk] has not visited his children's school.

Because Belk does not challenge these findings of fact, they are binding on this Court.[4]

---

[4] The trial court also found the following:

10.     Following additional training Sgt. Allen will be stationed at a Marine base to be determined in the United States.

. . . .

19.     [Belk's] girlfriend cohabits with him at his parents' residence.

20.     [Belk's] girlfriend cohabits with him at his parents' residence when the children are present during visitation periods.

21.     [Belk] cohabits with his girlfriend at her mother's residence.

. . . .

24.     [Belk] testified that he did not have sufficient funds to establish his own residence.

. . . .

27.     During Christmas 2010, [Belk] only exercised one and one-half (1-1/2) days of a possible 12 days' Christmas holiday possession.

28.     This year, [Belk] did not exercise visitation for his daughter['s] . . . birthday.

. . . .

31.     [Belk] has not sought information concerning his children's school performance.

. . . .

33.     [Belk] has not taken the children to medical or dental appointments.

Belk contends that there is no evidence to support these specific findings. Belk also appears to be asserting that the evidence is factually insufficient. However, even were we to agree that there is no evidence or factually insufficient evidence to support the above findings, the remaining undisputed findings and testimony from the hearing support the trial court's best-interest determination. *See In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g); *see also City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005); *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam).

In addition, Belk claims that the trial court disregarded contrary evidence relevant to these findings. However, from our review of the record, the trial court did not disregard any evidence or reasonable inferences to the contrary that a reasonable factfinder could not, such that it erred in making these findings. *See In re T.D.C.*, 91 S.W.3d at 872; *see also Keller,* 168 S.W.3d at 822, 827. Nonetheless, for the purpose of this opinion, we will disregard these findings.

9

*See Nw. Park Homeowners Ass'n, Inc. v. Brundrett*, 970 S.W.2d 700, 704 (Tex. App.—Amarillo 1998, pet. denied).

**2.  Relevant Testimony from the Hearing on Allen's Motion to Modify**

At the hearing on Allen's motion to modify, the testimony established that Allen and Sgt. Allen were married on March 5, 2010, after a relationship of four months.   Sgt. Allen had been with the children for probably less than a week before the marriage.   Although Sgt. Allen will likely be stationed in Virginia, North Carolina, or California after he finishes his schooling, he could be stationed at a Marine Corps base anywhere in the world.

Allen described the following benefits of moving to a military base:   (1) a guaranteed four-bedroom house with all utilities paid except for cable and phone service; (2) nice neighborhoods with playgrounds, pools, community centers, and walking trails; (3) programs for children, including some that help them understand and cope with having deployed family members; (4) YMCA memberships and soccer leagues; and (5) lake days and family days which provide an opportunity to be with others who are experiencing similar things.   She explained that they would have a good support system and that they are missing out on a number of these opportunities now because they do not live on the base.   According to testimony provided by Sgt. Allen, if he is deployed, Allen will be able to maintain her residence on base with the children "along with the several other wives and families of deployed service members."

Allen further testified that in her opinion, the children will thrive more wherever they move and this is "most definitely" in their best interest.   She had found several possible job opportunities in the Virginia area and would look for work if they moved there, but her

10

first priority would be to get the children established and involved in school and other activities and to get the household established.

According to Allen, the children are in a "very stable" living environment with her—"extremely stable"—and in her opinion, the children's relationship with her new husband is going "remarkably well," is very close knit and caring, and has developed very quickly. She also believes that the environment would be more stable in a military setting, even though Sgt. Allen could be deployed. Allen explained that under the current arrangement, the children are never sure about when they will see their father because his work schedule changes; there is not a lot of consistency in the days that Belk sees the children. According to Allen, when they move and are able to be with Sgt. Allen, the children would have that consistency. In addition, the children would have the consistency of their scheduled visits with their father. In her opinion that would provide stability that they do not have right now. Allen also explained that the children are resilient. They have adjusted to change and will adapt very well in the future, adjusting to moves and new schools regardless of their age.

Allen testified that the children have a good relationship with their father and that she was "absolutely not" seeking a modification of the geographic restriction to get the children away from him. Rather, she plans to do everything she can to keep them in contact with their father. She and Sgt. Allen have talked about the importance of maintaining Belk's relationship with the children, and Sgt. Allen is supportive of that.

Allen testified that, in her opinion, it would be in the best interest of the children for them to be able to be with their mother. Although Allen believed it would be in the best

interest of her children to see their father less, she did not believe they would see him less with the geographical modification. However, Allen acknowledged that the children would see their father two days a month under the new schedule verses eight days under the old schedule. She also testified that it would not be good for the children to see their grandparents and extended family members less than they see them now; it is important to maintain extended family relationships.

According to Sgt. Allen, he had spent one five-week period and one six-week period with the children since he and Allen were married. He testified that his relationship with the children is progressing "[f]antastically well. . . . They are all very special individuals, and I love them as if they were my own flesh and blood. I love them dearly, and they have taken quite a liking to me. The—all three of them have professed their love for me." Sgt. Allen also testified that he explained to the children that he was "not trying to replace their father or—or cut him out of their lives." He and Allen are "very, very supportive of the kids maintaining their contact with their father because we feel that it is important for the children . . . ." When asked if he was going to be able to get the children home once a month every month to visit their father, Sgt. Allen said, "Yes."

Sgt. Allen believed "that [the children] are very pleased with the new family unit . . . ." He also testified that it would be in the best interest of the children to be in a home with their mother and a husband who loves her and them and where they have regular access to their father. Sgt. Allen agreed that if they were to move to a military installation with the children they would not have as much access to their extended families, but in light of the circumstances, he believed it would be in their best interest.

Belk also testified at the hearing. He explained that he has a very good relationship with the children. His work schedule is three days on and three days off and the normal agreed visitation arrangement was to take the children on the first two days he has off. He attempted to see the children as much as possible—every available opportunity when he was not working because with that arrangement he could be with the children and did not have to leave them with someone else.

According to Belk, his children's education is important to him. Allen handles the education issues, keeps him informed about school activities and grades, but has never asked him to do anything with the school. Belk testified that he could have had lunch with his children at school, but did not. He goes over their homework when they are with him. He talks to his children about the teachers. Belk testified that "[i]f there's an issue at school or if their grades are going to start slipping then I'd go up there." He takes his daughter to art classes and goes to soccer games and school programs when he is not working.

Belk has been in a relationship with his fiancée Victoria Marie Granado for two years. No wedding date has been set. Belk stays at Granado's place sometimes. She stays with him on occasion at his parents' house.

In his opinion, he would not be able to see the children as often if they moved and the quality of their relationship would go down if they did not visit as often. Belk testified that he does not have the funds or resources to travel to California or Virginia for additional visits. His parents have a very good, loving relationship with the children and spend a lot of time with them. Belk believes that it would not be in the best interest of the

13

children if they were unable to visit with their grandparents as often or to see their father as often. It is his opinion that the children do not want to move to either Virginia or California and that it would not be in their best interest to move because all extended family members are in Texas. According to Belk, he has the resources to take care of the children and is absolutely willing to do so. Belk also testified that he has the ability to keep the children in the same schools and would do so. He would grant Allen the same visitation rights that she is offering him. That arrangement would minimize disruption in their lives and would be in their best interest. On cross-examination, Belk agreed that if there was a position available at a Wal-Mart store closer to the children he could move there.

Granado testified that, in her opinion, the children have a great relationship with their father, who she believes is a good father. Belk and the children get along really well and have a lot of fun. He takes an active part in his children's lives, and the children enjoy spending time with him. Belk talks with his children regularly and is a good provider. Granado has never seen Belk abusive toward the children. And they definitely have a good relationship with their grandparents. Granado and Belk plan to marry, and there would be no problem with the children living with them. She would help and support Belk with the children. According to Granado, it would not be in the children's best interest if they saw their father or their grandparents less than they do now.

Randy Smith, a counseling psychologist who maintains a private practice working with parents and children, testified that he talked with Belk on two occasions to make a determination in support of this suit. He and Belk discussed Belk's relationship with his

14

children.  From these discussions and results of the tests administered, Dr. Smith had several indications that Belk was a good father and had a good relationship with his children.  Dr. Smith opined that less visitation "would have a negative impact on—on [Belk] and his children's relationship."  He also stated that he did not believe that it would be in Belk's best interest as a parent to see his children less; however, because he had not assessed the children directly, Dr. Smith testified that it would be difficult to say if it would be in their best interest if the children were removed from their current environment to perhaps Virginia or California.  Based on the testimony of the parents, Dr. Smith understood that both cared for the children; they have a "positive post-divorce relationship."  According to Dr. Smith, it is apparent that Belk is not attempting to control his ex-wife, but rather wants to maintain his relationship with his children.

### 3. Analysis

Challenging the sufficiency of the evidence, Belk asserts that this relocation serves only the interest of the mother of the children.  He contends that the testimony and evidence in this case show that the stability of the family after relocation is in question. Belk argues that moving the children from a stable home environment where they have had continued and extensive contact with their father, extended family, and friends to a far away location and a new stepfather with whom they have had limited contact will have a negative impact upon the emotional and psychological health of the children.  Belk generally contends that there was insufficient evidence to show any enhancement economically, educationally, or socially for the children.

Belk directs this Court to testimony establishing that Allen had recently married

15

Sgt. Allen, after only a four-month relationship. He also refers us to evidence that establishes that Sgt. Allen was with the children for only a brief time before the marriage and that since the marriage he has been deployed a good portion of that time, although he communicates with the children by computer. Belk further asserts that although Allen agreed that she thought she would have a good support system on the military base, she did not identify that support system. Rather, according to Belk, what the evidence does show is that Allen is willing to take her children away from all of their extended family, remove them from their friends and school activities, and move the children to a military base where Allen does not, as yet, have a home or a job. By his contentions, Belk argues that the testimony and record reflect insufficient evidence to support a determination that the move would be in the best interest of the children.

The flaw in Belk's analysis is that it requires this appellate court to ignore evidence heard by the trial court. We have previously summarized the key evidence developed during the trial. Belk highlights the evidence favoring his argument that the modification is not in the children's best interests, and he challenges the trial court's consideration of other evidence. However, beyond the evidence that Belk has a good relationship with his children, that the children's grandparents have a good relationship with the children, and that Belk is concerned about their well-being, supports his children, participates in their activities, and is willing to be their primary care giver, there is sufficient evidence to support the trial court's best interest finding.

The evidence shows that although Allen and her new husband had a four-month relationship before they married, they had known each other since they were twelve years

16

old.   According to both Allen and Sgt. Allen, the children's relationship with him is going well.   Sgt. Allen testified that he loves the children and that they have "taken quite a liking" to him.   While Belk's opinion was that the children did not want to move to either Virginia or California, Sgt. Allen believed "that the children were pleased with the new family unit."   The evidence also shows that relocation will provide (1) positive opportunities that will address the physical and emotional needs of the children; (2) support programs and extracurricular activities to promote the children's best interests; (3) employment opportunities for Allen; (4) a safe and stable home environment; (5) frequent and continuing a meaningful relationship with their father; and (6) a mother and stepfather who will encourage and facilitate that relationship.   *See* TEX. FAM. CODE ANN. § 153.001(a); *Lenz*, 79 S.W.3d at 14; *Holley*, 544 S.W.2d at 371-72; *In re C.R.O.*, 96 S.W.3d at 449.   There is also evidence of other factors to consider, including the following:   (1) the children's desires; (2) the parental abilities of the individuals involved; (3) the plans for the children by the parents; (4) reasons for and against the move, including Allen's good faith in requesting the move; (5) leisure opportunities; (6) the effect of the move on extended family relationships; (7) the effect of the move on the children's visitation and communication with Belk; (8) Belk's ability to relocate; and (9) community ties.   *See Lenz*, 79 S.W.3d at 14; *Holley*, 544 S.W.2d at 371-72; *In re C.R.O.*, 96 S.W.3d at 449.

Viewing the evidence in a light favorable to the finding and indulging every reasonable inference that would support the trial court's findings while crediting favorable evidence if a reasonable factfinder could do so and disregarding contrary evidence

unless a reasonable factfinder could not, we conclude that reasonable and fair-minded people could reach the result under review. *See City of Keller*, 168 S.W.3d at 822, 827-28. Thus, we conclude that the evidence is legally sufficient to support the trial court's determination that the modification with its restriction to the United States would be in the best interest of the children. As to the factual sufficiency of the evidence, the trial court heard the evidence and decided the issue against Belk. We will not disturb the trial court's decision because, after examining all of the evidence, we cannot say that such a decision is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Cain*, 709 S.W.2d at 176. We overrule Belk's first issue.

**B. ABUSE OF DISCRETION IN DETERMINING THAT MODIFICATION WAS WARRANTED**

By his second issue, Belk contends that the trial court abused its discretion when it found that Allen's requested geographical modification was warranted. He asserts that the record fails to show any adherence or reference to any guiding principle of law. Belk further claims that the facts and testimony do not reflect the trial court's review and application of any guiding factors in assessing the best interest of the children. We disagree.

Having determined that there was sufficient evidence for the trial court to make its determination regarding the modification, we further conclude that the trial court made a reasonable decision based on the evidence—a decision that was neither arbitrary nor unreasonable nor without reference to any guiding rules and principles. *See Downer*, 701 S.W.2d at 241; *In re T.D.C.*, 91 S.W.3d at 872. The trial court heard testimony supporting many factors, identified above, that can bear on the determination of a child's

18

best interest in the context of residency restrictions and relocation. *See Lenz*, 79 S.W.3d at 14; *Holley,* 544 S.W.2d at 371-72. The evidence and the trial court's findings also show that the trial court considered Texas public policy as it relates to the modification standards in this relocation context. *See* TEX. FAM. CODE ANN. § 153.001(a); *Lenz*, 79 S.W.3d at 14. Because it is apparent from our review that the trial court did not act arbitrarily, but rather acted reasonably and with reference to guiding rules and principles, we conclude that the trial court did not abuse its discretion when it ordered the modification of the residency restrictions. *See Gillespie*, 644 S.W.2d at 451; *In re C.R.O.*, 96 S.W.3d at 446. We overrule Belk's second issue.

## V. CONCLUSION

We affirm the trial court's order.


NELDA V. RODRIGUEZ
Justice


Delivered and filed the 12th
day of January, 2012.

19