NUMBER 13-05-00421-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG


 


KRISTA LEE SHOEMAKE, Appellant,


v.
 


KEVIN LEE SHOEMAKE, Appellee.

 


On appeal from the 267th District Court of Victoria County, Texas.


 


MEMORANDUM OPINION



Before Chief Justice Valdez and Justices Rodriguez and Garza


Memorandum Opinion by Chief Justice Valdez


 

 Appellant, Krista Lee Shoemake, brings this appeal from a divorce decree
terminating her marriage to appellee, Kevin Shoemake. Appellant does not challenge
dissolution of the marriage or division of the community estate, but instead presents four
issues assigning error to the portion of the decree appointing Kevin as the joint-managing
conservator of the children with the exclusive right to establish the children's residence. 
Incorporating the applicable standard of review, Krista's first issue asks whether the trial
court abused its discretion by determining that naming Kevin joint managing conservator
with the exclusive right to determine the residency of the children was in the children's best
interest. Her second, third, and fourth issues recast the same question. We affirm. 

I. FACTUAL AND PROCEDURAL BACKGROUND 

 Kevin and Krista were married in September 1994. The couple's first child was born
in 1995 and their second in 1997. Kevin also had custody of K.S., his daughter from a
previous marriage. The couple resided in Victoria, Texas. Due to illness, Kevin was
unemployed but received $1,970 a month in social security benefits. Krista worked as a
bus driver for the Victoria Independent School District but, at the time of trial, was
employed as a certified nurse's assistant in Gatesville, Texas.

 On February 15, 2004, Kevin left Krista and both children and temporarily moved
in with his mother, taking K.S. with him. The litigation began after Krista filed for divorce
on March 18, 2004. On March 26, 2004, Kevin filed a counter-petition asserting only a
general denial. Between the time of their separation and their divorce, Kevin and Krista
agreed on temporary orders, pursuant to which each was named a temporary joint
managing conservator. Krista was given the exclusive right to establish the children's legal
residence in either Gatesville, Texas, or Victoria County. 

 The trial court conducted a final divorce hearing on October 28, 2004, where it heard
testimony from both parties. Krista testified it was her understanding that she was to
continue to live, along with her children, in their home and all furniture would be left in the
house until the divorce became final. However, she was forced to move out and live with
her parents because the electricity had been turned off for lack of payment. According to
Krista, the parties orally agreed Kevin would pay her $448.00 a month in child support. At
the time the electricity was cut-off, Krista was waiting for a check from Kevin in order to pay
the electricity bill. The check never came. Thus, with no electricity she felt forced to move. 
Krista testified that she lived with her parents for about a month before moving to
Gatesville. 

 Krista also testified to three separate occasions that Kevin removed items from the
house without telling her. She testified that Kevin broke into the house and removed items
that belonged to her and the children. She stated that after she found out that Kevin was
removing items from the house, she went back to the house and removed all that was left
and placed the items in a storage building. 

 Krista further testified that since the separation she has been the primary caretaker
of the children. She buys them school clothes, feeds them, and takes them to the doctor. 
According to Krista, Kevin has failed to provide the children with anything other than the
monthly $448.00 in child support. She testified that he does not even ask to help with
school clothing or school supplies. Krista also testified that her work schedule is set
around her children. She is able to see the children off to school in the morning and is at
home by the time they arrive from school. 

 Krista also attested to Kevin's illness. She indicated that Kevin is a diabetic and is
prone to go into shock, becomes incapacitated, and is unable to take care of the children. 
She claimed that whenever Kevin had an attack she would have to come home from work
to care for the children. 

 On cross-examination, Krista testified that initially she was reluctant to let Kevin see
the children, because Kevin had threatened to take the children away from her. Without
a temporary order in effect, Krista refused to let Kevin see the children on his own. She
also stated that she never personally informed Kevin of the move from Victoria to
Gatesville. She assumed that because Kevin communicated with the children through
telephone, they had told him of the move. Krista further testified that after starting her new
job on July 5th, she was only able to return to Victoria three times: twice in July and once
in August. She also mentioned that on those three occasions, she would invite Kevin over
to her parents' house so that he could spend time with the children but he refused to
attend. 

 Kevin, on the other hand, testified that after the separation he moved into his
mother's house, but temporarily moved into an apartment at the end of February. He
stated that since the separation he has been able to purchase a house where he and his
daughter K.S. reside. With regard to his illness, Kevin testified that he has had three mild
attacks since the separation. Kevin testified that he usually gets a twenty or thirty minute
warning before he gets his attacks, usually in the form of cramping or diarrhea. Once he
feels these symptoms he gives himself a shot and if he does not feel any better, he places
a phone call to his mother or the paramedics. Kevin testified that he has learned to deal
with his illness, and on many occasions has been able to drive his daughter to different
events across the state. Kevin stressed that at no point has his medical condition affected
his ability to care for his children. 

 Kevin further testified that he has provided assistance to his children in addition to
the monthly $448.00. He testified that he bought the children new clothes and new tennis
shoes. He acknowledged, however, the clothes he bought his children were meant to stay
at his house, and were not meant for them to take back to Gatesville. He also testified he
made sure, through monthly payments, that the children remain insured through the CHIPS
program. Kevin also responded to the allegations that he broke into the home in order to
remove items while Krista was not present. He stated each time he went to the house he
called the police and asked them if he was breaking the law. They assured him he was
not. He stated that he needed to return to the house in order to gather some clothing for
himself and his daughter K.S. He also admitted to removing some furniture and other
items that he believed belonged to him. 

 Kevin also testified that Krista refused to let him see his children. He denied ever
threatening Krista that he was going to take the children away from her. Indeed, he stated
he never gave Krista a reason for her to think that he was going to take the children away. 
He stated because he has lived in Victoria for over ten years and because a majority of his
family resides in Victoria, he has never considered leaving the area. With nowhere else
to go, he could not understand where Krista thought he would take the children. He also
admitted that at first he was in agreement that Krista should be the primary conservator of
the children; however, after she refused to let him see them, he changed his mind and felt
that it would be better if the children stayed with him. He testified that on many occasions
he would try to contact the children at Krista's mother's house, but all that he would receive
was either an answering machine or rude comments. He also testified that on one
occasion Krista dropped off one of his daughters at his house with soiled pants. On
another occasion, his daughter showed up with what looked like flea bites on her legs and
shoulders. Kevin took her to the emergency room, where the doctor told him that she had
chigger bites on her shoulders and impetigo. 

 Kevin further testified that once he became disabled, and was no longer able to
work, he began to take over a large part of the responsibility of taking care of the children. 
He stated that from 1999 until the separation, he played a major role in his children's
upbringing. He testified that he would take them to school, pick them up from school, and
take them to their ball games. He would also attend practices, take them to Girl Scouts,
and take them to piano lessons. Kevin also testified that the relationship between K.S. and
his other two daughters is a good one. He stated they are sisters, love each other, and
always have a good time together. 

 Kevin finally testified he never received notification of Krista and the children's move
to Gatesville. He stated he became suspicious after he began calling Krista's mother's
house and either got the answering machine or was told they were not there. He found out
Krista and his children were living in Gatesville after he went to the Victoria Independent
School District Administration Office, and they informed him that his children were
attending school in Gatesville. 

 On February 11, 2005, the trial court entered a Final Decree of Divorce naming
Kevin joint managing conservator with the exclusive right to establish the primary residence
of the two children. The trial court entered findings of fact and conclusions of law in
support of its order. In support of its holding that Kevin establish the primary residence of
the two children the court cited the following factors: (1) that Kevin had participated in the
child rearing, having had a major role in raising the children since approximately 1999; (2)
that the father's medical condition does not interfere with his ability to take care of the
children and he is able to devote more time to the children; (3) that the father has had
custody of a 12 year-old daughter from a previous marriage with whom the two children
have a good sisterly relationship; (4) that it is in the best interest of the children that the
primary residence of the children be limited to the geographic area of Victoria County; (5)
that the mother engaged in conduct not in the best interest of the children by not letting the
father see the children and by not letting the father speak to the children; and (6) both
parents have cared for the children and have entrusted the care of the children to the other
parent and have a loving relationship with the children. 

II. APPLICABLE LAW

 The Family Code establishes the best interest of the child as the primary
consideration when courts determine conservatorship of a child. Tex. Fam. Code. Ann. §
153.002 (Vernon 2002). Section 153.134 authorizes a court to name both parents joint
managing conservators if it finds such a designation is in the best interest of the child. Id.
§ 153.134(a). The statute lists six specific factors in determining best interest and directs
courts to consider any other relevant factor. Id. Several, but not all, of the listed factors
correspond with those set out by our supreme court in Holley v. Adams, 544 S.W.2d 367,
371-72 (Tex. 1976). Although Holley involved termination of parental rights, appellate
courts look to the factors listed there in determining the issue of the best interest in other
suits affecting the parent-child relationship. See, e.g., In the Interest of C.R.O., 96 S.W.3d
442, 451 (Tex. App.-Amarillo 2002, pet. denied). Section 153.134(b) requires an order
naming joint managing conservators to designate one as having the exclusive right to
determine the child's primary residence, to allocate other rights and responsibilities of the
parents and to include provisions to minimize disruption of the child's education, daily
routine and association with friends. Tex. Fam. Code Ann. § 153.134(b) (Vernon 2002). 

 Trial courts are afforded wide discretion in making determinations of custody
possession and visitation. In the Interest of C.R.T., 61 S.W.3d 62, 65 (Tex. App.-Amarillo
2001, pet. denied) (citing Gillespie v. Gillespie, 644 S.W.2d 449, 451 (Tex. 1982)). Abuse
of the court's discretion is shown only when it acts without reference to any guiding rules
or acts arbitrarily or unreasonably. Id. Our review must also give deference to the trial
court because it is in the best position to observe the demeanor of the witnesses and
evaluate their credibility. In the Interest of De la Pena, 999 S.W.2d 521, 526 (Tex. App.-El
Paso 1999, no pet.). An abuse of discretion ordinarily does not occur when the trial court
bases its decision on conflicting evidence. See In re K.R.P., 80 S.W.3d 669, 674 (Tex.
App.-Houston [1st Dist.] 2002, pet. denied). 

III. ANALYSIS

 Krista attacks three specific findings made by the trial judge used to support its
holding granting Kevin the exclusive right to determine the children's primary residence. 
Krista contends that the trial court abused its discretion in finding (1) that Kevin had a major
role in raising the children since 1999; (2) Kevin's medical condition does not interfere with
his ability to care for the children; and (3) that she failed to notify Kevin that she moved to
Gatesville and did not let him see or speak to the children. 

 With regard to Krista's first contention, that the trial court abused its discretion in
determining that Kevin had a major role in raising the children since 1999, Krista
specifically contends that the evidence shows she has always been the primary caretaker
of the children. Indeed, evidence does exist that prior to their separation, Krista helped in
raising the children. She testified that in the last five years, she has spent more time with
her daughters at home, and has always attended educational counseling and school
sessions with them. She also testified that Kevin, on the other hand, never attended
school functions with the children, and never took them to doctor appointments. Evidence
also exists that since the separation, Krista has been the primary provider for the children. 
She testified that, although she works 38 hours a week, she sees to it that the children
have clothes for school, are properly fed, and gets them to the doctor when needed. She
further testified that since the separation, Kevin has rarely helped her in providing for the
children. 

 On the other hand, the record also indicates that Kevin, because his illness forces
him to remain unemployed, assumed many of the duties that came along with being an at-home parent. He testified that because Krista was at work during the day, he took on the
responsibility of caring for the children when they were home. He testified he would take
the children to and from school, would take them to practice, to piano lessons, and would
attend their ballgames. Kevin also testified he would attend parent-teacher conferences
during the week and maintained the children's insurance. He further testified that although
he had moved out and left Krista with the children, he offered to continue to pick the
children up from school, but Krista refused. 

 With regard to Krista's second contention, that the trial court abused its discretion
in finding that Kevin's medical condition does not interfere with his ability to care for the
children, Krista urges us to review an exhibit introduced into evidence at the final divorce
hearing. The exhibit is a letter written by Kevin to his disability examiner. The letter was
written in 1998 and describes the various symptoms that Kevin experienced at that time. 
Krista contends that this letter indicates the severity of Kevin's medical condition, and
therefore, the court erred in holding that his condition does not interfere with his ability to
care for the children. The record indicates, however, that since the letter was written Kevin
has learned to cope with his illness. He testified that he is able to recognize the symptoms
that indicate he is about to have an attack, is able to give himself a shot in order to reduce
the possibility that he may have a severe attack, and if he does not feel better, he is able
to make a phone call to his mother or the paramedics if needed. He stressed that the letter
written in 1998 does not accurately depict his current ability to care for himself. He stated
that he wrote that letter when he was first diagnosed, when he was still learning about his
illness, and each year since he has gotten better. Kevin further testified that his medical
condition has never affected his ability to care for his children. 

 Krista lastly contends that the trial court abused its discretion in holding that she
failed to notify Kevin that she moved to Gatesville and did not let him see or speak to the
children. Krista asserts that because the temporary orders indicated that she would have
the right to determine the physical residence of the children, such evidence creates a form
of judicial estoppel concerning the wife's moving to Gatesville. However, Krista cites to no
authority supporting such a contention. See Tex. R. App. P. 38.1(h). The record indicates
that Krista moved the children to Gatesville without ever informing Kevin. It was only after
Kevin inquired with the Victoria Independent School District Administration Office that he
found out his children were now living in Gatesville. Kevin testified that he did not see his
daughters for approximately four months. Krista admitted that without an order in effect,
she would not leave the children alone with Kevin because she was afraid he would take
them away from her. Kevin, on the other hand, stated that he never gave her reason to
think that he would take the children away from her, that he has lived in Victoria for the last
ten years, and is not planning to leave any time soon. 

 The evidence need not be compelling or conclusive to support the trial court's
exercise of discretion. See Holley v. Holley, 864 S.W.2d 703, 706 (Tex. App.-Houston [1st
Dist.] 1993, writ denied) (holding there is no abuse of discretion if some evidence of a
substantive and probative character supports the decision); see also Stevens v. Stevens,
No. 03-98-00687-CV, 1999 Tex. App. LEXIS 6334, at *6 (Tex. App.-Austin Aug. 26, 1999,
no pet. h.) (mem. op., not designated for publication). Although there is evidence that
Krista could provide a stable, loving environment for the children, there is also evidence
that Kevin is prepared to do the same. When reviewing a record containing this type of
sufficient-but conflicting-evidence, we must accord great deference to the trial court's
decision because it observed the witnesses and was able to assess intangibles not
apparent in the written record. See Bates v. Tesar, 81 S.W.3d 411, 424 (Tex. App.-El
Paso 2002, no pet.); see also In re M.A.S, No. 03-04-00753-CV, 2006 Tex. App. LEXIS
1116, at *15 (Tex. App.-Austin Feb. 10, 2006, no pet.) (designated for publication). We
therefore accord to the trial court great latitude in judging credibility and concern for the
children's best interest. See McGalliard v. Kuhlmann, 722 S.W.2d 694, 697 (Tex. 1986);
see also In re J.P.B., 180 S.W.3d 570, 574 (Tex. 2005); In the Interest of B.L.D. and
B.R.D., 113 S.W.3d 340, 348 (Tex. 2003). The admitted conflicts in the evidence here
must be resolved by the trial court, who may choose to believe one witness and disbelieve
others. Kuhlman, 722 S.W.2d at 697. We cannot substitute our judgment for that of the
trial court simply because other evidence would support a different conclusion. In re
Barber, 982 S.W.2d 364, 366 (Tex. 1998); Walker v. Packer, 827 S.W.2d 833, 840 (Tex.
1992). 

 Our review of the record shows that sufficient evidence exists to support the trial
court's decision that Kevin should determine the children's primary residence. Issues one
through four are overruled, and we affirm the court's decree. 

IV. CONCLUSION 

 Having overruled Krista's issues on appeal, we affirm the judgment of the trial
court.

 

 ROGELIO VALDEZ,

 Chief Justice



Memorandum Opinion delivered and filed 

this the 3rd day of May, 2007.