

# NUMBER 13-13-00081-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

---

## IN THE INTEREST OF A.M.B.V., A CHILD

---

**On appeal from the County Court at Law
of Kleberg County, Texas.**

---

# MEMORANDUM OPINION

**Before Justices Rodriguez, Benavides, and Perkes
Memorandum Opinion by Justice Rodriguez**

Appellant B.A.B.,[1] the mother of A.M.B.V., appeals from an order granting the petition of M.E.V., the child's father, to modify the parent-child relationship. *See* TEX. FAM. CODE ANN. § 156.101(a)(1) (West, Westlaw through 2013 3d C.S.). By one issue, appellant challenges the trial court's discretion in granting appellee's requested relief and

---

[1] We use initials for the family members to protect the child's identity. *See* TEX. FAM. CODE ANN. § 109.002(d) (West, Westlaw through 2013 3d C.S.).

ordering a geographical restriction on A.M.B.V.'s primary residence. Her arguments address the sufficiency of the evidence to prove that a material and substantial change occurred—a change that is necessary to modify a prior order. *See id.* We affirm.

## I. BACKGROUND

A.M.B.V. was born on March 20, 2009. A child support review order was entered on June 8, 2009. On November 26, 2009, when A.M.B.V. was seven months old, appellee filed a motion to modify the June 8 order. In his motion, appellee complained that circumstances were "about to materially and substantially change." In his supporting affidavit, appellee averred, among other things, that (1) appellant was unemployed and had recently informed him that she was going to Missouri; (2) A.M.B.V. "will not be allowed to see any of his extensive extended family in South Texas if he is taken to Missouri. . . . [He] will not be provided the opportunity to know his heritage and culture if he is taken to Missouri"; and (3) the child's physical health and "emotional development may be significantly impaired if he is removed from his culture and his extensive extended family." In appellant's unverified affidavit, filed on November 30, 2009 in response to appellee's motion to modify the June 8 order, appellant set out that she no longer intended to move because she had accepted employment in Kingsville, Texas.

On November 30, 2009, appellant and appellee entered into an agreed order (2009 agreed order). The order continued the parties' joint managing conservatorship. Appellant retained the right to designate A.M.B.V.'s primary residency without a geographic restriction. The parties agreed to certain visitation periods. The order also

2

required appellant to give appellee a sixty-day notice of any contemplated move. On April 27, 2012, appellant notified appellee of her intent to move to Illinois.

On September 6, 2012, when A.M.B.V. was three and a half years old, appellee filed a petition to modify the parent-child relationship, asserting that circumstances had materially and substantially changed since the 2009 agreed order. Appellee requested that he "be appointed as the person who has the right to designate the primary residency of the child," and he sought a restriction of A.M.B.V.'s residence to Kleberg County. Appellee also claimed that this requested modification was in the best interest of the child. Appellant generally denied appellee's claims.[2]

On December 29, 2012, at the hearing on appellee's motion to modify, the following witnesses testified: (1) appellee; (2) appellant; (3) A.M.B.V.'s adult cousin; (3) A.M.B.V.'s paternal grandmother; (4) appellee's friend of thirteen years; and (5) appellee's wife, D.V. All witnesses testified that appellee was a good father and appellant was a good mother. Relevant portions of testimony provided by appellant and appellee are set out in the paragraphs that follow.[3]

Appellee testified that he has always been a part of A.M.B.V.'s life. But according to appellee, before A.M.B.V. was a year old, his visits were more like supervised visits. After A.M.B.V. was a year old, appellee could keep him overnight, which, according to appellee, made it "a lot better bonding than it was, you know, being as him and me being

---

[2] Appellant also pleaded the affirmative defense of res judicata and filed a counter-petition requesting increased child support. Each party sought attorney's fees. From our review of the record, it appears as if the trial court granted an increase in appellee's child support payments but denied all other relief. The parties do not appeal these rulings.

[3] Because the parties are familiar with the facts, we will recite only the portions of appellee's testimony and appellant's testimony that are relevant to our analysis. *See* TEX. R. APP. P. 47.4.

together . . . . [Appellee] didn't have to worry about . . . tak[ing] [A.M.B.V.] home that same day in a couple of hours so [he] could spend the weekend with him. [They] could have plans to do things, . . . go to the park or go out of town." Appellee affirmed that he had a stronger relationship with A.M.B.V. at the time of trial because of the interaction that he had with him. Appellee also testified that he and appellant have been able to co-parent. Appellee explained that he agreed to no geographic restriction when he entered into the 2009 agreed order, but that "today is a different day": "[he] would hate for [A.M.B.V.] to start thinking, 'Well, what happened to my dad? Where is he at? Is it my fault, you know, that I can't see him" for months when he used to come "every other weekend"? Appellee explained that he did not "want [A.M.B.V.] leaving the security of what he's got right now, you know."

Appellee also responded to the following questions:

Q. Do you think that today that you have more control over the emotional aspects of your complicated relationship between [appellant, D.V.] and your son?

A. Yes, I do.

Q. Do you feel that you are in command of your emotions?

A. Yes, I do.

Q. And that you have grown from 2009 in your ability as a parent to care for your son?

A. Yes, I have.

In the absence of a reporter's record setting out appellant's testimony, the parties filed an agreement and a supplemental agreement on the absent reporter's record. According to the filings, appellant testified that at the time of the 2009 agreed order,

4

appellee was aware of her intended move out of state and that her intended move out of state was the catalyst of the motion to modify appellee filed in November 2009. Now in 2012, she again intended to move out of state, this time to Illinois where she had been accepted into what she described as a premier graduate program at the University of Southern Illinois Edwardsville—a program that would increase her job and earning potential.

Appellant also testified that although she believed appellee was a good father to A.M.B.V., it was her perception that appellee was acting in his own interest in 2009 and again in 2012 when he sought modification of SAPCR orders, continually attempting to become the conservator who had the right to designate the primary residence of the child. According to appellant, except for one occasion, appellee never asked to have A.M.B.V. outside his ordered possession time, never took him to the doctor, and never took time from work to care for him when he was sick.

On December 21, 2012, the trial court rendered its decision in open court. Among other things, the trial court concluded the following:

> [B]ecause of [appellant's] intended move . . . I am going to order a geographical restriction to Kleberg or contiguous counties. . . . [W]hen there is a move and specifically because your client intended to move to Illinois, I would find that that would be—would not be in the child's best interest. The testimony surely established that the father, [M.E.V.], has a good relationship with the child. There was no evidence that [B.A.B.] was not a good mother. I believe everybody said that she was a good mother and that [M.E.V.] was a good father.

> At the time of the [2009 agreed] order, . . . the child was but a few months old. I believe that the material and substantial change is based on the bond that [M.E.V.] has—has created with [A.M.B.V.] and to move beyond Kleberg or contiguous counties would have a great (inaudible) on that relationship that they have . . . .

5

On October 25, 2013, the trial court entered its written order in this suit to modify the parent-child relationship. The trial court found, among other things, that it was in the best interest of the child "that the primary residence of the child shall be Kleberg County and contiguous counties" and that appellant and appellee continue as joint managing conservators, with appellant having "the exclusive right to designate the child's primary residence" within that area. By ordering a geographical restriction, the order implied a finding that a material and substantial change had occurred since the 2009 agreed order.[4] This appeal followed.

## II. MATERIAL AND SUBSTANTIAL CHANGE IN CIRCUMSTANCES

By her sole issue, appellant contends that the trial court abused its discretion when it found a material and substantial change in circumstances that warranted a geographical restriction. Appellant argues that a change could not have been found because the events under review were anticipated in the 2009 agreed order. And as to the relationship between appellee and A.M.B.V., even if not contemplated by the 2009 agreed order, appellant asserts that there was no evidence of any bond that existed in 2009, such that the trial court could determine that a material and substantial change had occurred in 2012.

## A. Standard of Review

A trial court's modification order is reversed only when it appears from the record

---

[4] The trial court's findings of fact and conclusions of law are consistent with its written order. Relevant to this appeal, the trial court found "that there was a substantial change in circumstances that warranted the Modification of the previous order and restricted the child to Kleberg County" and concluded that A.M.B.V. shall be geographically restricted to Kleberg County.

as a whole that the trial court abused its discretion. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *In re C.R.O.*, 96 S.W.3d 442, 446 (Tex. App.—Amarillo 2002, pet. denied). "Per that standard, we cannot interfere with the decision so long as some evidence of a substantive and probative character supports it and the ruling comports with the law." *In re C.M.G.*, 339 S.W.3d 317, 319 (Tex. App.—Amarillo 2011, no pet.) (citing *In re C.R.O.*, 96 S.W.3d at 447).

Under our abuse-of-discretion review, *see Gillespie*, 644 S.W.2d at 451, a legal sufficiency issue is not an independent ground for asserting error, but it is a relevant factor in determining whether the trial court abused its discretion. *See In re T.D.C.*, 91 S.W.3d 865, 872 (Tex. App.—Fort Worth 2002, pet. denied) (op. on reh'g). In determining whether the trial court abused its discretion in modifying conservatorship, we must inquire: (1) whether the trial court had sufficient information upon which to exercise its discretion; and (2) whether the trial court erred in its application of discretion. *Id.* The sufficiency review is related to the first inquiry. *Id.*

In conducting a legal sufficiency review, we consider the evidence in the light most favorable to the trial court's judgment, disregarding all evidence and inferences to the contrary unless a reasonable factfinder could not do so. *City of Keller v. Wilson*, 168 S.W.3d 802, 810–11 (Tex. 2005). Anything more than a scintilla of probative evidence is legally sufficient to support the trial court's finding. *In re T.D.C.*, 91 S.W.3d at 872. If we determine that there was sufficient evidence to support a decision on modification, then we must address the second inquiry and determine whether the trial court made a reasonable decision. *Id.*

7

Finally, we are mindful that "the trial judge is best able to observe and assess the witnesses' demeanor and credibility, and to sense the 'forces, powers, and influences' that may not be apparent from merely reading the record on appeal." *In re A.L.E.*, 279 S.W.3d 424, 427 (Tex. App.—Houston [14th Dist.] 2009, no pet.); *see In re De La Pena*, 999 S.W.2d 521, 526 (Tex. App.—El Paso 1999, no pet.) (giving deference to the trial court because it is in the best position to observe the demeanor of the witnesses and evaluate their credibility). We, therefore, defer to the trial court's judgment in matters involving factual resolutions and any credibility determinations that may have affected those resolutions. *George v. Jeppeson*, 238 S.W.3d 463, 468 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "The mere fact that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court in a similar circumstance does not demonstrate that an abuse of discretion has occurred." *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985)). And "an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence. There is generally no abuse of discretion if some evidence supports the decision." *In re K.R.P.*, 80 S.W.3d at 674.

## B. Applicable Law

The best interest of the child is always the primary consideration in determining issues of conservatorship. *See* TEX. FAM. CODE ANN. § 153.002 (West, Westlaw through 2013 3d C.S.); *In re V.L.K.*, 24 S.W.3d 338, 342 (Tex. 2000); *Zeifman v. Michels*, 212 S.W.3d 582, 589 (Tex. App.—Austin 2006, pet. denied). One attempting to modify an

8

order establishing conservatorship, possession, and access to a child must show that (1) there has been a material and substantial change in the circumstances since the rendition of the existing order or the signing of a mediated or collaborative settlement agreement on which the order is based, and (2) the modification would be in the best interest of the child. TEX. FAM. CODE ANN. § 156.101(a). Because appellant does not challenge the trial court's finding that the geographical restriction is in the best interest of A.M.B.V., the only question before this Court is whether a material and substantial change of conditions affecting the child has occurred. *See id.*

The trial court's determination is fact-specific and must be made according to the circumstances as they arise. *Zeifman*, 212 S.W.3d at 593. But the evidence must show what conditions existed at the time of the entry of the prior order and what material changes have occurred in the intervening period. *In re C.C.J.*, 244 S.W.3d 911, 919 (Tex. App.—Dallas 2008, no pet.); *see Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex. 1966); *Zeifman*, 212 S.W.3d at 594 & n.1; *see also In re C.B.*, No. 13-11-00472-CV, 2012 WL 3139866, at *2 (Tex. App.—Corpus Christi Aug. 2, 2012, no pet.) (mem. op.). "[T]he record must contain both historical and current evidence of the relevant circumstances," otherwise "the court has nothing to compare and cannot determine whether a change has occurred." *Zeifman*, 212 S.W.3d at 594 n.1. When the moving party, who has the burden of showing a material and substantial change in circumstances, has not met that burden, the trial court must deny the motion. *See id.* at 589. In this case, we examine the evidence to determine what conditions existed on November 30, 2009, the date of the order sought to be modified, and what material changes occurred in the intervening

9

period.  *See In re C.C.J.*, 244 S.W.3d at 919; *Zeifman*, 212 S.W.3d at 594 & n.1; *see also In re C.B.*, 2012 WL 3139866, at *2.

**C.      Anticipated Circumstances**

**1.      Appellant's Relocation to Illinois**

Appellant asserts that the trial court could not have considered her relocation in determining whether a material and substantial change had taken place because it was anticipated at the time the 2009 agreed order was rendered.  We agree that the provisions of the 2009 agreed order anticipated the possibility of appellant's out-of-state move.  However, we need not address this argument because, although the trial court reasoned that the move would not be in the child's best interest, we cannot conclude that the trial court determined that appellant's impending realization of her planned move to Illinois was the material and substantial change in circumstances upon which it based the modification order.  Instead, as the trial court specifically set out at the hearing, the changed circumstances supporting the trial court's determination involved the relationship between appellee and A.M.B.V.  Moreover, even if we were to agree that the trial court considered appellant's anticipated relocation as a basis for its material-and-substantial-change determination, as discussed below, we still cannot conclude that the trial court was precluded from doing so.  *See Zeifman*, 212 S.W.3d at 593; *see also Bates v. Tesar*, 81 S.W.3d 411, 429–30 (Tex. App.—El Paso 2002, no pet.) (discussing cases considering whether a parent's relocation is a material and substantial change in circumstances and setting out the following factors to consider in making that determination:  (1) distance between the parties after the relocation; (2) proximity,

10

availability, and safety of the travel arrangements; (3) quality of the relationship between the child and non-primary conservator; (4) nature of the contacts with the non-primary conservator; (5) possibility that relocation would deprive the non-primary conservator of regular and meaningful access; (6) impact of the move on quality and quantity of future contacts with the non-primary conservator; (7) motive for the move; and (8) the feasibility of preserving the relationship through suitable visitation arrangements).

### 2. The Bond between Appellee and A.M.B.V.

Appellant further contends that the trial court erred when it found that a material and substantial change in circumstances had occurred based solely on the bond between appellee and A.M.B.V. because a developing bond, that would require nurturing, was anticipated in the 2009 agreed order. Appellant argues that the 2009 agreed order accounted for A.M.B.V.'s increased age and any corresponding change in the relationship between appellee and A.M.B.V. She claims that it addressed any change in the relationship through additional or extended visitation depending on A.M.B.V.'s age, his attendance at school, and the distances between their homes. Appellant noted, for example, that when the trial court modified the 2009 agreed order, A.M.B.V. was three years old, and appellee would have been entitled to exercise additional visitation that was provided for in the 2009 agreed order.

In support of her argument, appellant relies on *Zeifman v. Michels*. *See* 212 S.W.3d at 593–96. Appellant contends that the facts in *Zeifman* are similar to the facts in the present case. *See id.*

In *Zeifman*, the trial court entered a modification order giving Michels, A.A.'s

11

mother, the exclusive right to make decisions concerning A.A.'s education.  *Id.* at 587.

> The trial court [also] determined that the circumstances of the child had materially and substantially changed since the date of the rendition of the original divorce decree.  Finding only that "A.A. is different, times are different, you're remarried, life is different," the trial court concluded that these circumstances constituted material and substantial changes.

*Id.*

On appeal, Zeifman, A.A.'s father, contended "that there was no showing that the circumstances with respect to A.A.'s education ha[d] materially and substantially changed."  *Id.* at 594.  The Austin Court agreed, setting out the following facts and reasoning:

> A.A. was an infant when the parties divorced and in second grade when the case was tried in October 2004.  The change alleged in the petition was her application and admission to St. Andrew's.  At trial, in response to specific questioning as to the change in circumstances, Michels testified only that the change was that A.A. had grown from an infant into a "beautiful, smart, lovely" seven-year-old and that her academic ability had surpassed Michels's expectations at the time of the divorce.  At the time of the divorce, the parties entered into a negotiated agreement that their children would attend certain schools.  They further agreed that if they were unable to agree on educational decisions, they would follow the recommendations of the teacher of the child at issue.  Thus, the agreement contemplated that the child would age, specified the schools agreed upon and even the alternatives, and provided a mechanism for dispute resolution should a disagreement arise.

*Id.*  The court further concluded the following:

> We do not agree that this evidence shows a change in circumstances as contemplated by section 156.101.  *See* TEX. FAM. CODE ANN. § 156.101. To accept Michels's interpretation of the requirement of a "material and substantial" change would render its language meaningless if age alone were sufficient in light of the parties' prior agreement.  Although there may be a variety of methods of showing material and substantial change, the requirement is that a change must be shown.  We conclude Michels's evidence is no evidence of a change in conditions.  Even assuming that the St. Andrew's application and admission or A.A.'s change of age constituted changes not contemplated by the agreement, there was no

12

evidence that either change was material or substantial. *Id.* at 595.

The *Zeifman* Court reviewed facts regarding the anticipation of a change in the child's age and the anticipation of a change in educational considerations. *Id.* at 594–95. It concluded that the earlier divorce decree addressed both areas *and* that there was no evidence of a change in conditions. *Id.* at 595.

In the present case, the 2009 agreed order arguably anticipated that A.M.B.V. would age, and the order addressed changes in the visitation schedule if the distance between households changed, when A.M.B.V. entered "school," meaning "primary or secondary school," and as A.M.B.V. got older. But we cannot conclude that the order anticipated or addressed the development of any bond between father and son such that a change in that relationship would not be material or substantial. *Cf. id.* at 594–95.

In addition, the *Zeifman* Court considered the possibility of a material and substantial change even though a change in the educational setting had been contemplated. *Id.* at 595. In so doing, the Austin Court concluded that the movant's evidence was no evidence of a substantial and material change regarding the school application and admission or the child's change of age. *See id.* Applying that same reasoning to the facts of this case, even if we were to conclude that the development of the relationship between appellee and A.M.B.V. was anticipated in the 2009 agreed order, the trial court was not precluded from finding that the expected change, when it occurred, was nevertheless a substantial and material change of circumstances. *See id.* at 593; *see also Kelly v. Tex. Dept. of Fam. and Protective Servs.*, No. 03-11-00670-CV; 2012

13

WL 5476840, at *3 n.1 (Tex. App.—Austin Nov. 9, 2012, no pet.) (mem. op.) ("[T]he anticipation or contemplation of change does not necessarily preclude a finding that the expected change, when it occurs, is nevertheless a substantial and material change of circumstances. We consider the anticipation or contemplation of a change as a possible factor in whether the change of circumstances meets the statutory threshold of materiality and substantiality."). Appellant's reliance on *Zeifman* and her argument that bonding was an anticipated circumstance in the 2009 agreed order and could not be used as evidence of a material and substantial change in circumstance is, therefore, misplaced.

We conclude that the trial court was not precluded from considering evidence of the bond or relationship between father and son in making its modification determination. And the trial court did, in fact, consider evidence of the father-son relationship. This consideration is reflected in the following statement made by the trial court at the hearing on appellee's motion to modify: "At the time of the [2009 agreed] order, . . . the child was but a few months old. I believe that the material and substantial change is based on the bond that [M.E.V.] has—has created with [A.M.B.V.] and to move beyond Kleberg or contiguous counties would have a great (inaudible) on that relationship that they have . . . ."

## D. Legal Sufficiency of the Evidence[5]

By her third argument, appellant contends that the evidence is insufficient to support a finding that a material and substantial change occurred based on the bond

---

[5] Although appellant titles this argument a challenge to the factual sufficiency of the evidence, the substance of her argument is that there is no historical evidence supporting a material-and-substantial-change determination. Because this is a no-evidence or legal sufficiency argument, we will review it accordingly.

between appellee and A.M.B.V. Appellant claims that the trial court could not have compared the conditions in 2009 to the circumstances that existed in 2012 and found a material and substantial change in circumstances because there was no evidence of the bond that existed between appellant and A.M.B.V. when the 2009 agreed order was entered.

Appellant claims that appellee provided only the following testimony that made any reference to his relationship with A.M.B.V. prior to the 2009 agreed order:

Q. And have you been—since when were you involved with [A.M.B.V.]'s upbringing?

A. Like in his life or . . .

Q. How did you find out that he was going to be coming into this world?

A. Oh. Through her.

Q. And how soon—how—how far into the pregnancy were you aware of him?

A. Right before.

Q. You were there?

A. Yeah.

Q. Okay, it's been four years since he was born, is that correct?

A. Yes.

. . . .

Q. . . . . In 2009 how old was [A.M.B.V.]?

A. Zero years old, you know. He was months.

Q. Okay. And that's when you went and drafted this agreed—

A.    Okay.

Q.    So had you bonded with him as much then or now?   When do you say there was more of a—a difference in your relationship?

A.    I've always been a part of his life.   It wasn't until after a year I could get him overnights, but before that, you know, I was—it was like a supervised visit.   She had to be there.   After the year, I could get him overnights, and yeah, I mean, it's a lot better bonding than it was, you know, being as him and me together, you know, I didn't have to worry about, you know, when I get him overnights, you know.   I didn't have to worry about I have to take him home that same day in a couple of hours so I could spend the weekend with him.   We could have plans to do things, you know, go to the park or out of town.

Q.    Okay.   So you would—would it be correct to say that your relationship with [A.M.B.V.] today is stronger—

A.    Oh, yeah.   Oh, yes.

Q.    Due to the interaction that you have with him?

A.    Oh, yes.

Appellant claims that this evidence is no historical evidence to show what conditions existed at the time of the entry of the 2009 agreed order.   We disagree.

This testimony reflects the relationship that appellee and A.M.B.V. had at the time of 2009 agreed order.   A.M.B.V. was seven months old.   Based on this evidence, the interaction appellee had with A.M.B.V. in 2009 involved "supervised" visits while appellant was present.   Appellant testified that only when A.M.B.V. was a year old did overnight visits begin, during which time they could be together and make plans to do things together.[6]   According to appellee, the overnight visits allowed for "a lot better bonding."

_____

[6] The record before the trial court also included appellee's affidavit filed in support of his 2009 motion to modify.   In his affidavit, appellee set out "even though the *Child Support Review Order* grants me possession of A.M.B.V. from 11:00 a.m. until 7:00 a.m. on the fist [sic], third, and fifth Saturdays and Sundays of each month until [A.M.B.V.] turns one (and then the Standard Possession Order goes into

16

Appellee agreed that his relationship with A.M.B.V. was stronger at the time of the hearing because of the interaction he had with him at that time. The trial court could infer from this testimony that a good, strong bond between appellee and A.M.B.V. did not exist in 2009 to the same extent it did at the time of the hearing.[7]

And the trial court had before it appellant's unverified statement that she had filed in response to appellant's 2009 motion to modify. In relevant part, appellant stated the following regarding appellee's relationship with A.M.B.V. in 2009: "[M.E.V.] has not filed this Motion for the sake of our son, but for his own sake and convenience of seeing his son when he feels like it"; "[M.E.V.] only wanted to take [A.M.B.V.] away from his mother for his own convenience and not for the best interest of our child"; "[u]ntil child support was court-ordered, [M.E.V.] did not intend to help me take care of his son. His only intention was and still is 'to save his own a**,' in his words." This evidence shows that appellee and A.M.B.V. had a different relationship when the 2009 agreed order was entered. In 2009, according to appellant, appellee was not bonding with A.M.B.V. He was doing things for his convenience and self-preservation.

---

place), I have been regularly keeping [A.M.B.V.] ~~overnights~~ for long weekends for [B.A.B.] so that she can go out with her friends and go out of town on trips. (Italics, underlining, and strike out in original.) Although this statement appears to be in conflict with appellee's trial testimony, "an abuse of discretion does not occur when the trial court bases its decision on conflicting evidence." *In re K.R.P.*, 80 S.W.3d 669, 674 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). Instead, "[t]here is generally no abuse of discretion if some evidence supports the decision." *Id.*

[7] Appellee also testified at the 2012 hearing that he did not want A.M.B.V. wondering where his father was when he did not visit him frequently and that he was concerned about A.M.B.V. "leaving the security of what he's got right now." Appellee explained that he had grown since 2009 in his ability as a parent to care for A.M.B.V. This evidence shows not only what conditions existed at the time of the entry of the prior order, but it also shows what material changes occurred in the intervening period. *See In re C.C.J.*, 244 S.W.3d 911, 919 (Tex. App.—Dallas 2008, no pet.); *see also Bukovich v. Bukovich*, 399 S.W.2d 528, 529 (Tex. 1966); *Zeifman v. Michels*, 212 S.W.3d 582, 594 & n.1 (Tex. App.—Austin 2006, pet. denied).

The trial court faced appellant and appellee. It observed the demeanor and personality of appellant and appellee. It felt the forces, powers, and the influences that we cannot discern by merely reading the record. *See In re A.L.E.*, 279 S.W.3d at 427. The trial court was, therefore, in a better position to analyze the facts and to weigh the virtues of the parties. *See id.* And we will defer to the trial court's judgment in these matters that involve factual resolutions and any credibility determinations that may have affected those resolutions. *See George*, 238 S.W.3d at 468.

From the above-referenced testimony and the record as a whole, the trial court could have reasonably concluded that appellee's bond with A.M.B.V. constituted a material and substantial change of circumstances since the 2009 agreed order. Considering the evidence in the light most favorable to the trial court's judgment and disregarding any evidence and inferences to the contrary, *see City of Keller*, 168 S.W.3d at 810–11, we conclude that there is more than a scintilla of probative evidence—legally sufficient evidence—to support the trial court's finding. *See In re T.D.C.*, 91 S.W.3d at 872. Having determined that there was sufficient evidence for the trial court to make its determination regarding the modification, we further conclude that the trial court made a reasonable decision based on the evidence—a decision that was neither arbitrary nor unreasonable nor without reference to any guiding rules and principles. *See id.*; *see also Downer*, 701 S.W.2d at 241. In other words, the trial court did not abuse its discretion when it ordered the modification of the residency restrictions. *See Gillespie*, 644 S.W.2d at 451.

**E.      Assertions Raised in 2009**

Appellant also argues, in her reply brief, that a material and substantial change in circumstance has not occurred in this case because the assertions made by appellee in 2012 are the same assertions he made in his request for modification in 2009. We disagree.

In support of her argument, appellant refers us to the following statements, among others, from appellee's affidavit, filed in support of his 2009 motion to modify: (1) "I have been regularly keeping [A.M.B.V.] ~~overnights~~ for long weekends for [appellant] so that she can go out with her friends and go out of town on trips"; (2) "[A.M.B.V.] will not be allowed to see any of his extensive extended family in South Texas if he is taken to Missouri"; (3) "[A.M.B.V.] will not be provided the opportunity to know his heritage and culture if he is taken to Missouri"; and (4) "[h]ere, [A.M.B.V.] has grandparents, cousins, aunts, and uncles and a loving step-mother. Here, [A.M.B.V.] and I have an extensive support system." While these statements from appellee's 2009 affidavit support a best-interest-of-the-child argument and are similar to evidence offered in support of the 2012 motion, we cannot conclude that they are the assertions upon which appellee based his 2009 material-change argument. Instead, it is the following statements from appellee's 2009 affidavit that appear to have supported appellee's material-and-substantial-change argument at that time:

> The circumstances of [A.M.B.V.] and his mother, [appellant], have materially and substantially changed since June, 8, 2009 when the Child Support Review Order was entered. . . . [Appellant] is no longer able to provide [A.M.B.V.] with a safe and stable home environment.

19

[Appellant] has been evicted from her apartment for non-payment of rent and she and baby [A.M.B.V.] will be homeless as of December 1, 2009.

[Appellant] quit her job in August and has been unemployed since then. She has no means of supporting herself or [A.M.B.V.] . . . .

. . .

[Appellant] has very recently stated via text messages that she is going to Missoui. . . . [Appellant] does not have a job or any job prospects in Missouri. [Appellant] does not have any concrete plans, she just knows that she will be homeless, with an eight month old, in Kingsville on December 1, 2009 and that she might be able to stay with her estranged, unemployed mother in Missouri.

There are no assertions in this 2009 affidavit regarding appellee's changing bond with A.M.B.V. And, in 2012, the trial court determined that it was that relationship, not the relationship with A.M.B.V.'s extended family, that had materially and substantially changed. We cannot conclude that a material and substantial change in circumstance has not occurred in this case because the assertions made in 2012 were the same assertions made by appellee in his request for modification in 2009, as appellant now argues.

## F.  Summation

We conclude that the trial court did not abuse its discretion in modifying the order of conservatorship to include a geographic restriction in A.M.B.V.'s primary residence. *See Gillespie*, 644 S.W.2d at 451; *In re C.R.O.*, 96 S.W.3d at 446; *see also* TEX. FAM. CODE ANN. § 153.134(b)(1)(A) (West, Westlaw through 2013 3d C.S.) (setting out that the trial court can establish "a geographic area" in which the children are to reside). And we cannot interfere with the decision because there was some evidence of a substantive and probative character to support its decision and the ruling comports with the law. *See In*

20

*re C.M.G.*, 339 S.W.3d at 319 (citing *In re C.R.O.*, 96 S.W.3d at 447). Appellee has shown that (1) there has been a material and substantial change in the circumstances since the rendition of the exiting 2009 agreed order, and (2) the modification would be in the best interest of the child. *See* TEX. FAM. CODE ANN. § 156.101(a). We overrule appellant's sole issue.[8]

## III. SANCTIONS

The final matter we must decide is whether we should impose sanctions on appellee. Appellant has requested that sanctions be imposed against appellee for allegedly misleading this Court regarding facts central to this litigation. Appellant claims that appellee set out a number of facts in his appellate brief that are unsupported or grossly misrepresented.[9] By doing so, appellant contends that appellee's counsel has violated Texas Rule of Disciplinary Procedure 3.03, the Standards for Appellate Conduct,

---

[8] Because appellant's remaining arguments are not dispositive of this appeal, we need not address them. *See* TEX. R. APP. P. 47.1.

[9] Appellant complains of the following unsupported statements set out in appellee's brief: (1) "[a]ppellee's wife had no relationship with A.M.B.V. due to the circumstances of his birth"; (2) "[a]t the hearing, the trial court learned of the co-parenting that was done by [a]ppellee and his wife. This partnership was not present in 2009"; (3) "[i]n 2009, A.M.B.V. had not had any substantial contact with [a]ppellee or his extended family"; (4) "[i]n 2009, this marriage was very vunerable [sic] and [a]ppellee's in-laws would have been very hostile towards him and any child born out of his adultery. The testimony that A.M.B.V. is taken to his stepmother's parents' home once a month for visits is certainly a material change from 2009"; (5) "[a] child that is born a product of a marital affair and subsequently bonds with the injured spouse is a major change in circumstances"; (6) "[t]estimony was presented that [a]ppellee and his wife are unable to have any children of their own which was not known in 2009"; (7) "[t]he trial court learned that in 2009 [a]ppellee was reconciling with his wife whom he had repeatedly cheated on with [a]ppellant"; (8) "[a]ppellee is able to participate in A.M.B.V.'s education and actively does so. Preparing A.M.B.V. for school is part of the evidence that was presented to the trial court by [a]ppellee"; (9) "[i]n 2009, the [a]ppellant['s] [a]ffidavit stated that "[M.E.V.] did not intend to help me take care of his son"; (10) "[t]he record contains a large amount of testimony as to the type of relationship A.M.B.V. has with his peers at school, his step-mother's extended family[,] and other ties in the community that were not present in 2009"; (11) "[appellee's cousin] testified as to the difference in A.M.B.V.'s demeanor when he was around his parents due to the circumstances of his birth"; and (12) "[d]uring cross examination, [appellee's mother] testified that [a]ppellant does not always allow A.M.B.V. to participate in family gatherings since she was no longer welcomed."

21

and Texas Rule of Appellate Procedure 38.1(i). *See* TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West, Westlaw current with amendments received through August 15, 2014) (TEX. STATE BAR R. art. X § 9); Texas Supreme Court, Standards for Appellate Conduct, *available at* www.txcourts.gov/media/514719/standards-for-appellate-conduct; *see also* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record."). Appellant asserts that through these alleged omissions and misrepresentations, appellee has caused her damages of increased appellate attorney's fees. She requests that this Court sanction appellee and require him to pay all costs appellant has incurred in this appeal.

> Attorneys owe to the courts duties of scrupulous honesty, forthrightness, and the highest degree of ethical conduct. Inherent in this high standard of conduct is compliance with both the spirit and express terms of the rules of conduct. The Texas Disciplinary Rules of Professional Conduct prohibit a lawyer from knowingly making a false statement of material fact to a tribunal.[10]

*Tex.-Ohio Gas, Inc. v. Mecom*, 28 S.W.3d 129, 145 (Tex. App.—Texarkana 2000, no pet.) (citations omitted). We also find guidance in the Standards for Appellate Conduct promulgated by the Texas Supreme Court. *See id.* Those standards set out that "counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record or legal authorities.[11] TEXAS SUPREME COURT, STANDARDS FOR APPELLATE

---

[10] Rule 3.03 provides, in relevant part that "[a] lawyer shall not knowingly . . . make a false statement of material fact or law to a tribunal." TEX. DISCIPLINARY R. PROF'L CONDUCT 3.03(a)(1), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (West, Westlaw current with amendments received through August 15, 2014) (TEX. STATE BAR R. art. X § 9).

[11] The Standards for Appellate Conduct provide, in relevant part, the following:

As professionals and advocates, counsel assist the Court in the administration of justice at

CONDUCT, *available at* www.txcourts.gov/media/514719/standards-for-appellate-conduct.

"A court that receives information clearly establishing that a lawyer has violated Texas Disciplinary Rules of Professional Conduct should take appropriate action. We retain the inherent power to sanction attorneys who engage in misconduct before our Court." *Tex.-Ohio Gas*, 28 S.W.3d at 145 (citations omitted)*; see Kutch v. Del Mar College*, 831 S.W.2d 506, 509 (Tex. App.—Corpus Christi 1992, no writ) ("We hold Texas courts have inherent power to sanction for bad faith conduct during litigation.").

We have reviewed appellant's contentions of misrepresentations and omissions in the present case, and we have reviewed appellee's brief. Having done so, we note appellant's concern, and we caution counsel for appellee against such practices. Yet we recognize the possibility that these alleged errors were not made in bad faith. On that basis, we decline to sanction appellee or his counsel.

## IV. CONCLUSION

We affirm the trial court's October 25, 2013 order in this suit to modify the parent-child relationship.

NELDA V. RODRIGUEZ
Justice

Delivered and filed the 8th
day of January, 2015.

---

the appellate level. Through briefs and oral submissions, counsel provide a fair and accurate understanding of the facts and law applicable to their case. . . . Counsel should not misrepresent, mischaracterize, misquote, or miscite the factual record or legal authorities.

TEXAS SUPREME COURT, STANDARDS FOR APPELLATE CONDUCT, *available at* www.txcourts.gov/media/514719/standards-for-appellate-conduct; *see Twist v. McAllen Nat'l Bank*, 248 S.W.3d 351, 365 (Tex. App.—Corpus Christi 2007, orig. proceeding [mand. denied]).